WARRICK BEVERAGE CORPORATION v. MILLER BREWING
COMPANY AND CENTRAL BEVERAGE COMPANY.

[No. 1-1075A194. Filed July 27, 1976.]

*William D. Powell, Frick and Powell,* of Evansville, for appellant.

*Franklin A. Morse, II, Thornburg, McGill, Deahl, Harman,*

*Carey & Murray*, of South Bend, for appellee Miller Brewing Company.

STATEMENT OF THE CASE

LOWDERMILK, J.—Plaintiff-appellant Warrick Beverage Corporation (Warrick) appeals from an interlocutory order denying its complaint for a temporary injunction against defendant-appellees, Miller Brewing Company (Miller) and Central Beverage Company (Central).

## FACTS

The facts necessary for our disposition of this appeal are as follows: Warrick is licensed by the State of Indiana to engage in the business of purchasing and selling alcoholic malt beverage products as a wholesale beer distributor. Prior to June 30, 1972, Warrick was a distributor of Meister Brau and Meister Brau Lite beers in Warrick, Posey and Vanderburgh Counties. These counties represented Warrick's "area of responsibility" for the wholesale distribution of Meister Brau products. Meister Brau had designated no other distributor for its products in these three counties.

On or about June 30, 1972, Miller purchased some of the assets of Meister Brau, Inc., among which were Meister Brau and Meister Brau Lite beers together with all rights attendant to the manufacture and sale of such beer products.

On June 30, 1972, Miller sent all former Meister Brau distributors the following letter:

"Gentlemen:

As you know, the Miller Brewing Company has purchased the 'Meister Brau,' 'Lite,' 'Buckeye' and other trademarks from Meister Brau, Inc.

While we have not assumed any of Meister Brau's rights or obligations under any agreement or arrangement you might have had with Meister Brau, Inc., we, as seller, hereby make sales to you, as buyer, or its Buckeye Division, with the understanding that you bear the responsibility actively and aggressively to market and distribute such brands of beer to retailers and other persons to whom you are legally author-

ized to sell beer in the Area of Responsibility previously set forth for you by Meister Brau, Inc., or its Buckeye Division.

With regard to your Area of Responsibility, Miller does not restrict you as to where or to whom you may resell beer. State laws (such as Illinois) may do so.

Our relationship is that of seller and buyer and in no other respect is any relationship established between us. *You are not required to place orders, nor are we required to accept orders for beer. As is the custom in our industry, these sales are made on a shipment-to-shipment basis only, and either of us can terminate this relationship at any time without incurring liability to the other.* You are and shall remain an independent business and neither of us is in any sense to be regarded as the principal or agent or employee of the other.

All beer sold to you will be sold F.O.B. our plant and the title and risk of loss passes to you (with a lien thereon reserved by Miller until payment is received) at the time the beer is delivered to you or to a carrier for shipment to you. All sales to you are to be on a cash basis or on such credit terms as may, from time to time, be established by Miller. Order and shipment procedures will be explained to you when you call the Regional Office listed below.

We are sending this letter to you in duplicate with the understanding that the terms hereof do not become effective until one copy, signed by you in the space below, has been returned to us within fifteen days of your receipt of this letter." (Our emphasis.)

Following the return of the signed copy of this letter to Miller, Warrick began purchasing and distributing the new Miller Lite beer. In the latter part of 1974 Miller concluded that it was not economically feasible to continue to distribute its new Lite beer exclusively through the twenty-two Meister Brau distributors in this State.

To realize its goal of maximum market saturation for its new product Miller entered into a distributorship agreement with Central which allowed it to distribute Miller's new Lite beer in Posey, Vanderburgh, Warrick, and Gibson Counties. It was this second distributorship agreement which precipitated this suit.

The trial court made findings of fact and conclusions of law, the pertinent portions of which were as follows:

## "CONCLUSIONS OF LAW

"1. This action is predicated upon the alleged violation by the defendants of the following Indiana statute (hereinafter referred to as 'the Statute') :

" 'CONTRACTS—UNLAWFUL CONDUCT—It is unlawful for a beer wholesaler or a brewer in this state, or a brewer or other person located outside this state who sells beer to a permitee in this state for the purpose of importation and resale within this state to:

\* \* \*

" '(2) Cancel or terminate an agreement or contract between a beer wholesaler and a brewer for the sale of beer, unfairly and without due regard for the equities of the other party. (IC 1971, 7.1-5-5-9, as added by Acts 1973, P.L. 55, 1, p. 290.)

\* \* \*'

"7. The letter agreement of June 30, 1972 (hereinafter referred to as 'the Contract') is a binding and enforceable agreement upon the parties thereto, Miller and Warrick.

"8. The Contract is not ambiguous as a matter of law; therefore, under Indiana common law, extrinsic evidence cannot be used to aid in its interpretation.

"9. Under Indiana common law, evidence of a custom or usage of trade cannot be admitted where the term or provision of the written agreement is neither ambiguous nor missing.

"10. Under the Uniform Commercial Code as adopted by Indiana, evidence of a usage of trade may be introduced to explain or supplement a writing even though no ambiguity is evident; however, such evidence of usage of trade may be admitted only when it is consistent with the express language of the written instrument.

"11. The evidence of usage of trade introduced by the plaintiff to explain or supplement the contract was inconsistent with the express language of the Contract and, accordingly, cannot be considered by the court in construing, interpreting or applying the terms of the Contract.

"12. An agreement between a brewer and a wholesaler for the purchase and sale of beer is governed by the Uniform Commercial Code as adopted by Indiana."

We reverse.

## ISSUES

1. Did the trial court err in finding the letter of June 30, 1972, sent by Miller to Warrick constituted the complete contract of the parties?

2. Did the trial court err in excluding evidence of trade usage as it relates to the relationship between beer manufacturers and their distributors?

3. Did the trial court err in finding that Miller did not violate IC 1971, 7.1-5-5-9 (Burns Code Ed.) when it allowed Central to distribute its new Lite beer in counties where Warrick had previously been the only distributor?

4. Did the trial court err in denying Warrick's complaint for a temporary injunction?

## ISSUE ONE:

Warrick argues the trial court erred in finding that the letter sent to it from Miller on June 30, 1972, was a complete and unambiguous contract. Warrick points out that the letter does not bind Miller to accept any orders for beer, nor does it require Warrick to place any beer orders. The letter also fails to establish any purchase price for individual beer sales which might be consummated between the parties.

The Michigan District Court had occasion to construe the very letter we now have before us in the case of *Oak Distributing Co., et al.* v. *Miller Brewing Company* (E.D. Mich. 1973), 370 F.Supp. 889. The court stated therein at page 906:

> "Under the rationale of the aforementioned decision, it is beyond doubt that the letters of agreement in question are unenforceable for lack of mutuality. Either party, Miller or plaintiffs, could terminate said letter agreements at will without cause. Furthermore, said agreements neither obligated Miller to sell, nor plaintiffs to buy, the beer products involved herein.
>
> "This conclusion, however, is merely a restatement of the obvious. It is the clear intent of the agreement to obviate any obligation of future performance with respect to both parties. The absence of mutuality is not the result

of mistake or machination, nor is it concealed in clever or cunning language; it is the clear intent of the agreement and, presumably, that of the signators thereto.

"Moreover, it is not accurate to say that such an agreement is null and void. It is merely prospectively unenforceable. With regard to past or present activities, it is clear that the agreement is viable, and provides 'a basis upon which the parties may deal with each other if they so desire' . . . The agreement is, therefore, valid to the extent that it describes the relationship of the parties as they perceived it and desired it to be."

Although not bound by *Oak Distributing Co., supra,* we agree that since either Warrick or Miller could have terminated their duties of performance at will without cause the letter agreement executed between them lacked mutuality and was unenforceable as respects their future performance. *Zeyher* v. *S.S.&S. Manufacturing Co., Inc.* (7th Cir. 1963), 319 F.2d 606; *Dayhuff* v. *Canonie Construction Co.* (1972), 152 Ind. App. 154, 283 N.E.2d 425, 427. Therefore, to the extent the trial court found (Finding No. 7, *supra*) that this letter of June 30, 1972, created *in and of itself* a binding enforceable obligation as to past and future performance by the parties it was in error.

However, upon appeal from an order denying a temporary injunction this court will not reverse the decision of the trial court unless it is shown that its action was arbitrary or constituted a clear abuse of discretion. *Elder* v. *City of Jeffersonville* (1975), 164 Ind. App. 422, 329 N.E.2d 654; *Public Service Co. of Indiana* v. *Indiana Statewide Rural Electric Co-op, Inc.* (1966), 247 Ind. 383, 216 N.E.2d 353.

Although error was committed, for the reasons hereinafter set forth we conclude that it was not such a clear abuse of discretion that reversal is necessary.

Any contract entered into by the parties for the purchase and sale of beer products would be governed by the provi-

sions of the Indiana Uniform Commercial Code. IC 1971, 26-1-1-101 *et seq.* (Burns Code Ed.). The parties in the case at bar do not contend otherwise. IC 1971, 26-1-2-204 (Burns Code Ed.) provides:

"(1)   A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.

"(2)   An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.

"(3)   Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."

The record discloses that Warrick, subsequent to being notified by Miller that Central would in the future be handling Miller's new Lite beer, continued to place orders for the new beer product. In fact, the record discloses that during the first eight months of 1975, Warrick was sold and received for purposes of resale more Lite beer than Central. Therefore, the trial court could have found that the letter agreement executed between Warrick and Miller, coupled with their conduct after the execution of the letter, recognized the existence of a binding contract.

We therefore hold that the trial court committed no reversible error in finding that a binding contract did exist between the parties herein at the time Warrick sought to obtain a preliminary injunction against Miller.

ISSUE TWO:

Warrick next argues that the trial court erred in failing to consider evidence of the course of dealings between the parties and trade usage as it relates to the relationship between beer manufacturers and beer wholesalers. (Conclusion of Law No. 11, *supra*.)

The trial court found that such evidence is properly con-

sidered only when it is consistent with the express language of the written instrument executed by the parties. IC 1971, 26-1-2-202 (Burns Code Ed.) provides:

"Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented.

(a) by course of dealing or usage of trade (section [26-1-]1-205) or by course of performance (section [26-1-]2-208) ; and

(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

Therefore, as we understand this statement of the parol evidence rule, when two or more contracting parties reduce their contractual understandings to written form and intend this writing as *the final expression of their contract* then evidence of course of dealing or usage of trade is properly admitted to supplement the otherwise integrated agreement of the parties only when such evidence does not contradict that agreement.

The trial court refused to consider Warrick's evidence of course of dealing and trade usage in that it found that the letter of June 30, 1972, was the final expression of Warrick's and Miller's distributorship agreement and the extrinsic evidence was inconsistent with their agreement.

We hold that such a finding by the trial court was an abuse of discretion and was contrary to law. As we have stated, *supra,* the letter dated June 30, 1972, was lacking in mutuality of obligation and therefore was not binding upon either Warrick or Miller as respects their future performance. This court is not prepared to say as a matter of law, that there can be a final expression of the parties' written agreement when the written instrument im-

poses upon neither party any binding obligation of performance. Furthermore, the letter standing alone is silent upon such important contractual matters as price and quantity. Although not fatal to the existence of a contract under the Uniform Commercial Code, nevertheless, it is an important indicator that Warrick and Miller did not intend the letter to be the final expression of their agreement.

Assuming arguendo that the letter of June 30, 1972, was the complete agreement of Warrick and Miller, we nevertheless feel that the evidence of course of dealing and trade usage should have been considered by the trial court, in that this evidence would have in no way contradicted the terms of the letter. See IC 1971, 26-1-2-202, *supra*. The purpose of Warrick's extrinsic evidence was to show that it was customary in the beer industry to establish single rather than dual distributorships. We are unable to find from the four corners of the letter of June 30, 1972, that it was the understanding of Warrick and Miller that in Warrick, Posey and Vanderburgh Counties two or more Miller Lite beer distributorships could be authorized. On the contrary, the letter is silent as to the number of distributorships which have been, or are to be, established in the future.

Owing to our resolution of these issues it will be unnecessary for us to consider issues three and four.

The judgment of the trial court denying Warrick a temporary injunction is reversed and remanded for further proceedings not inconsistent with this opinion.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 352 N.E.2d 496.