559 F.2d 460
 22 UCC Rep.Serv. 1141
 ROCKWELL ENGINEERING CO., INC., Plaintiff-Appellant,
v.
AUTOMATIC TIMING & CONTROLS COMPANY, a Division of American
Manufacturing Company, Inc., and Rockford Controls
Company, Inc., Defendants-Appellees.
 No. 76-2165.
 United States Court of Appeals,
Seventh Circuit.
 Heard April 11, 1977.
Decided July 18, 1977.
 
 Donald W. Ward, John F. Ittenbach, Indianapolis, Ind., for plaintiff-appellant.
 Herbert C. Snyder, Jr., Indianapolis, Ind., for defendants-appellees.
 Before CASTLE, Senior Circuit Judge, and CUMMINGS and PELL, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 In this diversity action, plaintiff Rockwell Engineering Co. alleged in Count I that defendant Automatic Timing & Controls Co.[1] wrongfully terminated plaintiff as its representative, causing plaintiff $150,000 in damages. In Count II, plaintiff sued Rockford Controls Co. for wrongfully inducing Automatic to terminate its contractual relationship with plaintiff. Plaintiff also sought $150,000 in damages from Rockford.
 
 
 2
 After filing separate answers to the complaint, the defendants filed a joint motion for summary judgment on the ground that Automatic validly terminated the selling relationship it had with the plaintiff, so that Rockford could not be liable for inducing any breach of a contractual relationship. After considering the briefs of the parties in support of and in opposition to the summary judgment motion, the district court filed findings of fact and conclusions of law and entered summary judgment for defendants. We affirm.
 
 
 3
 The district court found that plaintiff, an Indiana corporation, was owned entirely by its president, Harvey P. Rockwell. Its principal place of business was in Indianapolis, Indiana, where it engaged in the business of manufacturing and selling electrical measuring and control devices. Plaintiff was the sales representative of defendant and other manufacturers of related products. The court also found that Automatic, a Pennsylvania corporation with its principal place of business in King of Prussia, Pennsylvania, was engaged in the business of manufacturing and selling electrical and electronic timing and control devices. Defendant Rockford was a manufacturers' representative for the sale of control devices made by various manufacturers, including Automatic. Rockford, an Illinois corporation, has its principal place of business in Glen Ellyn, Illinois.
 
 
 4
 In 1956, plaintiff became a representative for Automatic in parts of Indiana, Kentucky and Ohio, but was terminated as a representative in 1959 or 1960. However, until 1967, it acted as a distributor of Automatic products. As a distributor it only resold products it purchased from Automatic. When plaintiff was Automatic's representative, it had an exclusive territory and received commissions on all Automatic products sold in its territory, even products sold directly to customers by Automatic. During the representation period, plaintiff also purchased Automatic products for resale to its customers.
 
 
 5
 On September 5, 1967, plaintiff entered into a written agreement with Automatic by which it again became a representative for Automatic in a territory limited to central and southern Indiana. The agreement provided that it could be terminated by either party upon 30 days' written notice. In April 1972, Automatic terminated that written agreement by written notice and proposed a new agreement. However, contract negotiations collapsed and no agreement was reached. Nevertheless, plaintiff continued to act as a representative for Automatic in the same territory until May 15, 1975.
 
 
 6
 On April 17, 1975, Automatic gave plaintiff written notice of its termination as a representative. Thereafter, plaintiff continued to act as a distributor and to make sales of Automatic products until September 24, 1975, when plaintiff returned its entire stock of Automatic products for credit and totally severed its relationship with Automatic.
 
 
 7
 Defendant Rockford has been a representative for Automatic since 1964. In May 1975, Rockford represented Automatic in northern Illinois, northern Indiana and part of Iowa. Rockford represented other principals in southern Indiana. After plaintiff was terminated as a representative of Automatic in May 1975, Rockford's territory as an Automatic representative was enlarged to include the parts of central and southern Indiana formerly served by plaintiff.
 
 
 8
 In its conclusions of law, the district court held that in Indiana, a contract providing for continuing performance which has no termination date, or which provides that it will last indefinitely, is terminable at will by either party. Since the oral understanding between plaintiff and Automatic after April 1972 was indefinite as to time, the court held that Automatic did not breach such agreement by terminating the relationship in May 1975. The court also determined that because the relationship between plaintiff and Automatic had lasted for a reasonable time and because Automatic gave plaintiff reasonable prior written notice of termination, Automatic was not liable, regardless of whether or not it acted in bad faith. Because Automatic was held entitled to terminate its relationship with plaintiff, the court decided that Rockford could not be liable for inducing a breach of contract inasmuch as no illegal conduct by Rockford was alleged.
 
 
 9
 (1) This case is of course governed by Indiana law. Plaintiff admits that under Indiana law prior to February 1975, an agency contract of indefinite term was terminable at will by either party regardless of the bad faith of the terminating party (Br. 15). See e. g., Miller v. Ortman, 235 Ind. 641, 136 N.E.2d 17, 33 (1956); House of Crane v. H. Fendrich, Inc., 146 Ind.App. 478, 256 N.E.2d 578 (1970); Bell v. Speed Queen, 407 F.2d 1022, 1024-1025 (7th Cir. 1969); B & T Distributors, Inc. v. Meister Brau, Inc., 459 F.2d 29, 31 (7th Cir. 1972).
 
 
 10
 (2) To avoid such authorities, plaintiff relies exclusively on Montgomery Ward & Co. v. Tackett, Ind.App., 323 N.E.2d 242 (1975), which was called to the district court's attention and was cited in its third conclusion of law.[2] There the franchise agreement was for one year and from year to year thereafter.[3] It contained the following termination article:
 
 
 11
 "XIV. TERM
 
 
 12
 "14.1 The term of this Agreement shall commence on the 27th day of February, 1969 and shall continue for a period of one year, and from year to year thereafter; provided, however, that this Agreement may be terminated as follows:
 
 
 13
 "(a) Either party hereto may terminate this Agreement as of the anniversary date of this Agreement in any year by mailing written notice of its election to do so to the other party sixty (60) or more days before the effective date of such termination.
 
 
 14
 "(b) In the event (i) that Agent shall misappropriate customers' merchandise, (ii) that Agent shall fail to follow Current Policies and Procedures, (iii) that Agent shall fail to keep the Agency open to the general public for business for any consecutive three (3) day period in accordance with Current Policies and Procedures, (iv) that any voluntary petition in bankruptcy shall be filed by Agent, or that an involuntary petition in bankruptcy shall be filed against Agent, or that a receiver shall be appointed for Agent or his property, (v) that Agent shall admit in writing his inability to meet his debts as they mature, or (vi) in the event of the death of Agent, Wards may forthwith terminate this Agreement by notice to Agent.
 
 
 15
 "(c) Either party may terminate this Agreement by notice to the other party if any default (other than a default of the nature described in paragraph (b) above) of the other party under this Agreement shall continue uncorrected for thirty days after written notice thereof to the other party.
 
 
 16
 "14.2 Upon termination of this Agreement in any manner, Wards shall be under no liability to Agent except for compensation on orders received and filled by Wards up to the date of termination. Wards shall have the right, following any termination of this Agreement, to conduct any merchandising business that Wards may elect within the trade area in which the Agency Store is located, including entering into Agreement with the other Agents."By its own terms, paragraph 14.1 permitted termination in three specific ways. Wards relied on clause 14.1(b)(ii) permitting it to terminate on notice because the Tacketts failed to follow Wards' Current Policies and Procedures. The jury decided against Wards and the intermediate appellate court affirmed because "sufficient evidence was adduced from which the jury could have found that Montgomery Ward failed to exercise good faith in the course of dealing with the Tacketts * * * (t)hroughout the course of the agency" (323 N.E.2d at 246; emphasis supplied). " * * * Ward(s) was apparently unwilling to engage in any type of dialogue to determine whether the parties' difficulties could be resolved. Instead, Wards chose the expedience of termination" id. at 247. In effect, Wards' reliance on clause 14.1(b)(ii) was deemed pretextual. Therefore the court upheld the jury verdict awarding the Tacketts $11,000 compensatory damages for losses they incurred from Wards' breach of its duty to exercise good faith during the life of the agency.
 
 
 17
 Tackett does not hold that under Indiana law[4] a party to an indefinite-in-time oral agreement can recover for termination after proper written notice if the principal acted in bad faith.[5] Indeed in a subsequent opinion by the same panel of the Indiana Court of Appeals which decided Tackett, the court observed that under a distributorship agreement of indefinite length "either (plaintiff) Warrick or (defendant) Miller could have terminated their duties of performance at will without cause * * *." Warrick Beverage Corp. v. Miller Brewing Co., Ind.App., 352 N.E.2d 496, 500 (1976).
 
 
 18
 As noted in Warrick (ibid.), the Indiana Uniform Commercial Code governs agency agreements like this one. It provides (Ind.Code 26-1-2-309):
 
 
 19
 "Absence of specific time provisions Notice of termination. (1) The time for shipment or delivery or any other action under a contract if not provided in this article (chapter) or agreed upon shall be a reasonable time.
 
 
 20
 "(2) Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party.
 
 
 21
 "(3) Termination of a contract by one party except on the happening of an agreed event requires that reasonable notification be received by the other party and an agreement dispensing with notification is invalid if its operation would be unconscionable."
 
 
 22
 The oral agreement here lasted "for a reasonable time," as concluded below (note 2 supra ), because it was in effect from April 1972 until terminated in 1975. Plaintiff received "reasonable notification" (idem ) because the termination letter was mailed on April 17, 1975, effective on May 15, 1975. Therefore the Commercial Code was satisfied.
 
 
 23
 Although not mentioned by plaintiff, in 1976 the Indiana legislature amended its franchise act to prohibit franchise agreements (as defined in that statute) from "permitting unilateral termination of the franchise if such termination is without good cause or in bad faith." Ind.Code 23-2-2.7-1(7). Unfortunately for plaintiff's cause, this statute does not apply to a 1972 agreement that was terminated in 1975. Since under Indiana law Automatic was entitled to terminate its relationship with plaintiff arbitrarily, Rockford is not liable for inducing a breach of contract. Spier v. Home Insurance Co., 404 F.2d 896, 898 (7th Cir. 1968).
 
 
 24
 Judgment affirmed.
 
 
 
 [1]
 According to the complaint, defendant Automatic is an operating division and agent of defendant American Manufacturing Co., a Delaware corporation with its principal place of business in a state other than Indiana. The district court found Automatic to be a corporate subsidiary of American. Therefore, as used in the opinion, the term "defendants" will include only Rockford and Automatic
 
 
 [2]
 In pertinent part, the third conclusion of law provides:
 "Since the relationship between the plaintiff and ATC (Automatic) had lasted for a reasonable time and reasonable prior written notice of the termination was give to the plaintiff by ATC, whether ATC acted in good faith or bad faith is irrelevant. * * * " (Citations omitted.)
 
 
 [3]
 The contract at issue in Tackett is not set forth in the opinion; however defendants have supplied us with a copy in an addendum to their brief. We, of course, may take judicial notice of state judicial records. Plaintiff does not dispute that the addendum is in fact a true copy of the Catalogue Sales Agency Agreement involved in Tackett
 
 
 [4]
 Indeed paragraph 21.1 of the agreement in Tackett states that "(t)his Agreement shall be governed in all respects by the laws of Illinois" (emphasis supplied). However, there is no indication whatever in the opinion that the appellate judge was determining the case on the basis of Illinois law. Yet if the judge meant to determine the case under Indiana law, he failed to cite the leading contra Indiana Supreme Court case of Miller v. Ortman, supra. Thus even if Tackett stood for the proposition that plaintiff wishes it did, its authority would be suspect
 
 
 [5]
 At oral argument, plaintiff relied on two Oklahoma cases cited in Tackett (323 N.E.2d at 247). Neither holds that a principal is liable for terminating a distributorship arrangement of indefinite term except for good cause