**Robert F. KINCAID and Georgetown Associates, Inc., Defendants-Appellants,**

v.

**Alexander LAZAR, Plaintiff-Appellee.**

**No. 1–180A23.**

Court of Appeals of Indiana,
First District.

June 17, 1980.

Jack G. Hittle, Church, Roberts & Beerbower, Noblesville, James Lowry, Kendall, Stevenson & Lowry, Danville, for defendants-appellants.

R. Ronald Calkins, Coates, Hatfield & Calkins, Indianapolis, John M. Howard, Jr., Howard & Lawson, Danville, for plaintiff-appellee.

NEAL, J.

## STATEMENT OF THE CASE

Defendants-appellants Robert F. Kincaid (Kincaid) and Georgetown Associates, Inc. (Georgetown) appeal a judgment of the Hendricks Circuit Court in favor of plaintiff-appellee Alexander Lazar (Lazar) in his suit for payment for professional services.

Trial was had to the court which entered findings of fact, conclusions of law, and judgment as follows, in relevant part:

### "FINDINGS OF FACT

1. In early 1976, . . . Kincaid . . . engaged . . . Lazar . . . to render services and to advise him regarding the formation of a retail pizza business; the parties were brought together by one Priscilla Barker, who would also become involved in the formation of the business.

2. Lazar is a public accountant; Kincaid was engaged in a retail meat business.

3. The parties, along with Priscilla Barker and the parents of Kincaid were to be the parties who were to be involved in beginning the business.

4. It was decided that a Corporation would be formed to begin and run the business.

5. There was no separate agreement that Lazar would be compensated for his services, other than agreement that he would receive stock in the Corporation which was to be formed; Lazar understood that his services initially were to be in the form of investment.

\* \* \* \* \* \*

7. Kincaid and Lazar agreed that Lazar should receive twenty percent (20%) of the initial stock issue of the Corporation; this agreement was reached sometime in June of 1976.

8. The parties agreed that Kincaid and his parents would 'finance' the Corporation, and that Lazar's only contribution was to be the rendering of accounting services and advice.

9. Lazar rendered accounting services and advice and spent Two Hundred, Eighty-seven (287) hours working for Kincaid and Georgetown and the reasonable value of the advice and services is $40.00 per hour.

10. Kincaid and his parents put all of the capital into the Corporation, and assumed all liability for the debt financing of the Corporation.

11. Lazar projected the necessary capitalization he thought would be required for the business, which projections were based on information he obtained from the potential suppliers.

12. Kincaid never promised or told Lazar what amount of actual cash he and his family would put into the Corporation, and there were never any discussions regarding the amount of actual cash versus the amount of debt financing for the Corporation.

13. Articles of Incorporation were filed with the Indiana Secretary of State, and the Corporation received its Charter from the Indiana Secretary of State on August 25, 1976; the Corporation was formed under the name Georgetown, Associates, Inc.

14. On August 26, 1976, a 'Subscription Meeting' . . . was held; the meeting was adjourned without the issuance of any stock to any party due to disputes arising with Priscilla Barker, regarding the percentage of stock she was to receive, and the meeting was also adjourned due to other minor questions which were raised at the meeting by all parties.

15. Plaintiff believed that the ratio of equity capital to debt capital established for the Corporation would subject him as a stockholder to possible liability in excess of his subscription, and he resigned as a shareholder, director and officer in consideration of the other shareholders agreeing to hold him harmless and not call his subscription.

16. Neither Lazar nor Priscilla Barker ever formally or informally demanded the issuance of their stock.

17. Lazar was never refused the issuance of his stock.

18. Sometime after the 'Subscription Meeting', and before April 18, 1977, the Corporation began doing business.

19. Prior to April 18, 1977, the business originators continued discussions which culminated in a written Agreement on (sic) originators executing a written Agreement entitled 'Agreement for the Release and Resignation of Alexander Lazar.'

20. The written Release and Resignation of Lazar provided, among other things, for the relinquishing by Lazar of 'any and all interest he may have in Georgetown Associates, Inc., either as a Subscriber, Shareholder, Officer, Director, or in any other capacity.'

21. There was consideration for the Release and Resignation of Alexander Lazar; Lazar was relieved of any and all liability, both past and future, from any

liability he may have incurred either as a Subscriber, Shareholder, Officer, or Director of Georgetown Associates, Inc.

22. The Release and Resignation of Alexander Lazar does run in favor of the Corporation, Georgetown Associates, Inc.

\*   \*   \*   \*   \*   \*

24. Lazar rendered no services to the Corporation after the signing of the Release and Resignation.

25. The written Release and Resignation is clear and unambiguous.

26. Lazar was represented by counsel with regard to his negotiation and execution of the written Release and Resignation.

27. Although Lazar had informed his counsel of his alleged claim for services, neither Lazar nor his counsel ever mentioned to the Defendants any intention to file or request a demand for payment of his services until almost six months after the signing of the Release and Resignation.

28. Neither the release nor the delay in making the claim, constitute a bar to Plaintiff's recovery of the reasonable value of services rendered; there has been no event occur to give rise to an estoppel of Plaintiff's right to assert his claim nor has there been any accord and satisfaction.

29. Plaintiff's advice and services were performed at the insistance and request of Defendant Kincaid and are properly chargeable to him individually and to the Corporation as well.

30. The reasonable value of Plaintiff's services is $11,480.00 and he should recover that from Defendants.

\*   \*   \*   \*   \*   \*

## CONCLUSIONS OF LAW

1. Defendant Robert F. Kincaid and Defendant Georgetown Associates, Inc. jointly and severally are justly indebted to Plaintiff in the sum of $11,480.00.

2. Plaintiff is entitled to entry of judgment herein consistent with said conclusion.

## JUDGMENT

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that Alexander Lazar have and recover of and from Robert F. Kincaid and Georgetown Associates, Inc. and each of them, the sum of $11,480.00.   .   .   ."

## ISSUES

Defendants' appeal raises two issues for review:

I. Whether the Agreement for the Release and Resignation of Alexander Lazar prohibits Lazar from recovering against Georgetown on a claim for services rendered by Lazar prior to Georgetown's incorporation; and

II. Whether Kincaid is personally liable to Lazar for the services rendered.

We reverse.

## DISCUSSION AND DECISION

Defendants appeal from a judgment in a cause tried to the court. Our well-established standard of review in such instance was stated in *University Casework Systems, Inc. v. Bahre*, (1977) Ind.App., 362 N.E.2d 155, 159:

"[O]n appeal of claims which have been tried to the court without a jury this court will not disturb the judgment of the trial court unless clearly erroneous. Ind. Rules of Procedure, Trial Rule 52(A). The findings or judgment of the trial court will be found clearly erroneous only when upon our review of all the evidence we are left with a definite and firm conviction that the trial court erred."

It is also well established that the judgment of a trial court will be affirmed if sustainable on any basis, *Ertel v. Radio Corporation of America*, (1976) Ind.App., 354 N.E.2d 783, and that we will not weigh the evidence nor determine the credibility of the witnesses but will look only to the evidence and reasonable inferences therefrom which tend to support the trial court's decision. *Bureau of Motor Vehicles v. Pentecostal House of Prayer, Inc.*, (1978) Ind., 380 N.E.2d 1225.

*Issue I.*

At issue is the effect of the following agreement among the parties executed on April 18, 1977:

### "AGREEMENT FOR THE RELEASE AND RESIGNATION OF ALEXANDER LAZAR

WHEREAS, Alexander Lazar has signed an initial subscription for the purchase of shares of Georgetown Associates, Inc., and

WHEREAS, such subscription has not been paid or called for by the Corporation as of this date, and

WHEREAS, the undersigned Alexander Lazar intends not to purchase such shares and intends to relinquish any interest he may have in the assets of said Corporation, and to resign as an officer and director of said Corporation, and

WHEREAS, in consideration of such relinquishing of rights, the remaining shareholders agree to hold the said Alexander Lazar harmless from any liability he may have incurred as either a subscriber, shareholder, officer or director of Georgetown Associates, Inc., . . .

\*    \*    \*    \*    \*    \*

1. Alexander Lazar hereby relinquishes any and all interest he may have in Georgetown Associates, Inc., either as a subscriber, shareholder, officer, director or in any other capacity.

2. Alexander Lazar hereby resigns as an officer and director of Georgetown Associates, Inc.

3. The remaining undersigned subscribers and shareholders of Georgetown Associates, Inc., and as the remaining Board of Directors, hereby accept the resignation of Alexander Lazar as an officer and director of the Corporation.

4. The remaining undersigned subscribers and shareholders of the Corporation, and in their capacity as officers and directors, hereby agree to hold Alexander Lazar harmless from any liability he may have incurred either as a subscriber, shareholder, officer, or director of Georgetown Associates, Inc."

Defendants argue that finding of fact No. 28, that the Agreement for the Release and Resignation of Alexander Lazar (hereinafter Agreement) does not constitute a bar to his recovery of the reasonable value of services rendered, is clearly against the logic and the evidence and is thus clearly erroneous. They contend that Plaintiff's claim for services had been reduced to an interest as a shareholder and that he bargained away that interest in the Agreement. We agree.

■ Plaintiff's action is one for quantum meruit in which he asked the court to find a quasi-contract implied by law because 1) Plaintiff rendered a benefit to Defendants 2) at the implied request of Defendants 3) under circumstances in which equity should demand compensation in order to prevent unjust enrichment. *Kody Engineering Company, Inc. v. Fox and Fox Insurance Agency, Inc.,* (1973) 158 Ind.App. 498, 303 N.E.2d 307.

■ The existence of a valid express contract for services, however, precludes implication of a contract covering the same subject matter. The rights of the parties are controlled by the contract and under such circumstances recovery cannot be had on the theory of quantum meruit. *Deck v. Jim Harris Chevrolet-Buick,* (1979) Ind.App., 386 N.E.2d 714; *Myers v. Maris,* (1975) 164 Ind. App. 34, 326 N.E.2d 577; *Engelbrecht v. Property Developers, Inc.,* (1973) 156 Ind. App. 354, 296 N.E.2d 798; 98 C.J.S. *Work and Labor* § 27 (1957). In the case at bar, the trial court's findings and the evidence adduced at trial show the existence of two express contracts which preclude Plaintiff's action for quantum meruit.

■ Findings Nos. 5, 7, and 8 and Plaintiff's own testimony show that Plaintiff and Defendants agreed that Plaintiff would provide accounting and consulting services in the formation of the corporation in return for 20 percent of the corporation's stock, and that Plaintiff signed the appropriate subscription agreement. Plaintiff testified: "We left the compensation factor

until about June of '76, at which time, Mr. Kincaid agreed that for my services I will be given twenty percent of the shares of stock"; there was "no other agreement"; "there was no specific assurances other than the insurance of receiving stock"; he looked upon the stock "as payment of my time and services"; and he did not discuss an hourly rate with Kincaid because he was going to be paid in stock. Pursuant to this first express contract, Plaintiff performed services although his stock had not been issued nor had he demanded same.

Finding No. 15 and the evidence show that Plaintiff began to fear liability for Georgetown's debts in excess of his subscription and, according to findings Nos. 19, 20, 21, and 22 and the evidence, he executed a second express contract, the Agreement, in which he relinquished his one-fifth interest in Georgetown in return for indemnification by the other shareholders from any future liability.

Plaintiff argues he can still pursue his claim for the reasonable value of his services because: 1) his relinquishment of the one-fifth interest in Georgetown was not supported by consideration; 2) the one-fifth interest in Georgetown was inadequate consideration for his services; 3) the Agreement does not expressly mention release or satisfaction of a claim for services; and 4) he did not intend to relinquish such claim in the Agreement.

The agreement of the other three subscribers and shareholders of Georgetown to hold Plaintiff harmless from "any liability he may have incurred either as a subscriber, shareholder, officer, or director" of Georgetown was consideration for his relinquishment of his interest in Georgetown as found by the trial court in finding No. 21. The assumption of a liability at the request of the promisor is a valuable consideration as, for example, a promise to indemnify another against a prospective loss or damage. *Whitman v. Whitman*, (1944) 206 La. 1, 18 So.2d 633; 17 C.J.S. *Contracts* § 81 (1963); *See Marrazzo v. Orino*, (1938) 194 Wash. 364, 78 P.2d 181.

Courts will not inquire into the adequacy of consideration, and where consideration of an indeterminate value is agreed upon by the parties, the court will not undertake to determine its adequacy but will respect the judgment of the parties and enforce this contract. *Vigo Agricultural Society v. Brumfiel*, (1885) 102 Ind. 146, 1 N.E. 382; *Cook v. American States Insurance Company*, (1971) 150 Ind.App. 88, 275 N.E.2d 832; *Wilson v. Dexter, Executor*, (1963) 135 Ind.App. 247, 192 N.E.2d 469. As found by the trial court in findings Nos. 5 and 7, Plaintiff agreed to exchange his services for the stock, by implication equating their values. We look no further than that.

In finding No. 25, the trial court found the agreement to release and indemnify to be clear and unambiguous and Plaintiff does not dispute this. In the absence of ambiguity, it is not within the function of the courts to look outside the instrument to arrive at the intention of the parties. *Jenkins v. King*, (1946) 224 Ind. 164, 65 N.E.2d 121; *Board of Directors, Ben Davis Conservancy District v. Cloverleaf Farms, Inc.*, (1977) Ind.App., 359 N.E.2d 546.

Plaintiff incorrectly argues that the language of the Agreement is not all encompassing. As found by the trial court in finding No. 20, Plaintiff relinquished in the Agreement "any and all interest he may have in Georgetown . . . either as a subscriber, shareholder, officer, director or in any other capacity." Since Plaintiff had bargained to exchange his services for the stock, his relinquishment of his interest as a subscriber and shareholder included any claim for his services regardless of whether such claim was expressly included in the language of the Agreement.

Plaintiff's contention that he did not intend to give up a claim for services in the Agreement is unavailing. It is the manifest mutual intent of the parties that controls not some private reservation Plaintiff neglected to express in the Agreement. *Lazarrus v. Employers Mutual Casualty Co.,*

(1977) Ind.App., 364 N.E.2d 140. The unambiguous language of the Agreement which shows an exchange of stock for indemnification, plus the trial court's findings which show an express agreement to exchange services for stock, leaves us with the definite and firm conviction that the trial court erred in finding No. 28. Findings Nos. 1 through 27 and the evidence lead to only one conclusion, that the Agreement bars Plaintiff's recovery in quantum meruit. Finding No. 28 is clearly erroneous.

*Issue II.*

Defendants challenge as contrary to the evidence and the law finding No. 29 that Kincaid is personally liable to Plaintiff for the value of his services. They argue the evidence shows no agreement, actual or implied, that Kincaid was individually requesting Plaintiff's services or personally guaranteeing payment. In the absence of such agreement, they contend Plaintiff, as a promoter of the corporation, is not entitled to compensation from a fellow promoter for personal services rendered in the furtherance of the enterprise, citing 18 Am.Jur.2d *Corporations* § 137 (1965).

Plaintiff argues that Kincaid was the sole promoter of the corporation and that in that role Kincaid promised to pay him with the stock. Plaintiff contends that in the absence of an agreement to the contrary, a promoter is personally liable on a contract which he entered into personally although for the benefit of the projected corporation and although the contract is subsequently adopted by the corporation when formed, citing *Mt. Pleasant Coal Company v. Watts*, (1926) 91 Ind.App. 501, 151 N.E. 7.

Findings Nos. 1, 3, 4, 5, 7, and 8 and the evidence show that, regardless of whether or not the trial court thought Plaintiff to be a promoter, the court erred in holding Kincaid personally liable to Plaintiff for the value of his services. Plaintiff himself testified that Kincaid never personally guaranteed that he would pay Plaintiff any money for his services and that "[n]o, there was no specific assurances other than the insurance of receiving stock." Thus, if Plaintiff were a promoter, there was not the agreement, actual or implied, between himself and his fellow promoter which is necessary under the law to establish his entitlement to compensation from Kincaid for services rendered in the formation of the corporation. On the other hand, if Plaintiff were not a promoter, there was an agreement with Kincaid that Kincaid would not be personally liable. We are thus left with the definite and firm conviction that the trial court erred in finding No. 29. Findings Nos. 1, 3, 4, 5, 7 and 8 and the evidence lead to only one conclusion, that Kincaid is not personally liable to Plaintiff. Finding No. 29 is clearly erroneous.

Clearly erroneous findings Nos. 28 and 29 are the findings necessary to support additional finding No. 30, conclusions of law Nos. 1 and 2, and the judgment. Therefore, the judgment of the trial court is reversed.

Reversed.

ROBERTSON, P. J., and RATLIFF, J., concur.