PURETEST ICE CREAM, INC., et al.,
Plaintiffs, Appellees,

v.

KRAFT, INC., Defendant, Appellee.

Camile Foods, Inc., Plaintiff, Appellant.

No. 86–1272.

United States Court of Appeals,
First Circuit.

Submitted Sept. 12, 1986.

Decided Dec. 4, 1986.

See also, D.C., 614 F.Supp. 994.

B. Ervin Brown, II, Badgett, Calaway, Phillips, Davis, Stephens, Peed & Brown, Winston-Salem, N.C., Norman B. Smith and Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N.C., on brief, for appellant.

L. Joseph Loveland, King & Spalding, Atlanta, Ga., Peter G. Hermes and Peabody & Arnold, Boston, Mass., on brief, for appellee Kraft, Inc.

Before CAMPBELL, Chief Judge, and BREYER and TORRUELLA, Circuit Judges.

BREYER, Circuit Judge.

In this breach of contract case arising under Indiana law, Camile, a food distributor, argues that Kraft, a food producer, unlawfully terminated its distributorship. Camile appeals from a summary judgment entered in Kraft's favor. The basis for the summary judgment was that Camile failed to point to any provision in any contract that prevented Kraft from unilaterally terminating the relationship. Camile now argues that there were several such provisions.

■ Camile first says that Kraft breached an oral contract. It claims that a representative of Kraft once told its president, Ron Cmiel, that "[w]e want you to retire in the business and we want your children to retire in the business." But, even assuming, as we must, that Kraft made this statement, the words would at best create a contract of "indefinite term;" and, it is well established under Indiana law that such a contract is terminable at will. *Marksill Specialties v. Barger*, 428 N.E.2d 65, 69 (Ind.App.1981); *House of Crane v. H. Fendrich, Inc.*, 146 Ind.App. 478, 256 N.E.2d 578, 579–80 (1970); *Bell v. Speed Queen*, 407 F.2d 1022, 1024–25 (7th Cir. 1969).

■ Camile next points to a provision in a later written contract forbidding Kraft from soliciting customers in Camile's territory "so long as Camile Foods, Inc. remains

a Sealtest [Kraft] distributor." On its face, however, this provision does not forbid Kraft from terminating Camile; it simply forbids Kraft from soliciting customers unless it *does* terminate Camile (which it did). Camile would like to prove, through extrinsic evidence, that the contract really means that Kraft cannot solicit customers "so long as Camile *wants to remain* a Kraft distributor." But (even assuming that this interpretation could somehow overcome the problem of "indefinite duration") this is not what the contract says. We can find no ambiguity in its written terms; and we do not believe that "reasonable people could find its terms susceptible" to the interpretation Camile suggests. *Ethyl Corp. v. Forcum-Lannom Associates*, 433 N.E.2d 1214, 1217–18 (Ind.App. 1982); *see also First Savings and Loan Association v. Treaster*, 490 N.E.2d 1149, 1151–52 (Ind.App.1986).

Camile argues that the doctrine of "merger" permits it to use Kraft's alleged prior *oral* statement (about retiring in the business) to create an ambiguity that would then allow Camile to introduce the same statement to resolve the ambiguity in Camile's favor. The merger doctrine, however, does not work in that way. Rather, the "merger" doctrine holds that where the subject matter of one contract is subsequently entirely subsumed in another, the latter becomes "the exclusive medium of ascertaining the contract by which the parties bound themselves." *McCaskey Register Co. v. Curfman*, 45 Ind.App. 297, 90 N.E. 323, 326 (1910); *see also Swanson-Nunn Realty Co. v. Gentry*, 134 Ind.App. 580, 186 N.E.2d 574, 580 (1962) ("[P]arol testimony can not be received to … provide the foundation for recovery upon an alleged oral understanding later reduced to writing."). The earlier contract disappears. It does not remain to exert some wraith-like influence on what otherwise would be clear, unambiguous meaning.

Camile's best argument is its claim that Kraft, in terminating Camile's distributorship, violated an implied promise to act in "good faith." An intermediate Indiana appeals court has read such a covenant into a contract allowing a manufacturer to terminate a dealer for cause, *Montgomery Ward & Co. v. Tackett*, 163 Ind.App. 211, 323 N.E.2d 242, 245–47 (1975), and the implications of that holding have been the subject of legal speculation, *see Survey of Recent Developments in Indiana Law*, 9 Ind.L.Rev. 1, 156–58 (1975). The Seventh Circuit, a court familiar with Indiana law, has, however, held that, notwithstanding *Tackett*, Indiana law allows unilateral termination of contracts of "indefinite duration" without cause or even in bad faith. *Rockwell Engineering Co. v. Automatic Timing & Controls Co.*, 559 F.2d 460, 463 (7th Cir.1977). Camile says the Seventh Circuit is wrong. But, we are reasonably confident that it is right, at least insofar as the facts of *this* case are concerned. The only "bad faith" that Camile now might prove in respect to Kraft's termination basically amounts to Kraft's having had no good reasons (only unspecified bad ones) for ridding itself of Camile. To accept a mere lack of good reasons as potentially creating a violation of a contract of "indefinite duration" would, however, transform such a contract from one terminable "at will" into one terminable "for cause." Neither the facts of *Tackett* (which involved a contract terminable only under specified conditions), nor the "bad faith" there proved (a host of specific acts, directly relevant to the ground for termination), nor the *Tackett* court's language suggests that it intended any such result. We therefore cannot accept the argument that *Tackett* effected a fundamental change in Indiana law relevant here.

*The motion to certify questions of law to the Supreme Court of Indiana is denied. The judgment of the district court is affirmed.*