**KEYSTONE CARBON COMPANY**
**Appellant–Defendant,**

v.

**Lowell A. BLACK and Lowell A. Black, Inc. Appellees–Plaintiffs.**

**No. 30A01–9109–CV–276.**

Court of Appeals of Indiana,
First District.

Sept. 9, 1992.

Transfer Denied Dec. 2, 1992.

---

**2.** Because we reverse on the first issue, we need not address J.L.'s second issue.

Alan H. Lobley, Scott S. Stone, Ice Miller Donadio & Ryan, Indianapolis, for appellant-defendant.

John C. Green, Michael E. Simmons, Hume, Smith, Geddes & Green, Indianapolis, for appellees-plaintiffs.

ROBERTSON, Judge.

Keystone Carbon Company appeals the judgment after a jury trial in favor of Lowell A. Black, Inc. [hereinafter Black will be used interchangeably for Black and Black, Inc.] in the amount of $160,000.00. Black alleged in his complaint that he suffered damages as a result of Keystone's breach of an implied covenant of good faith and fair dealing in the wrongful termination of their agency relationship. Keystone raises one (1) issue which requires that we reverse and remand with instructions that judgment be entered in favor of Keystone. It is:

> Whether Indiana recognizes a cause of action for the wrongful termination of an agency relationship effected under an express "at will" termination provision in a contract?

Black, Inc. cross-appeals, raising three (3) issues. However, as our resolution of Keystone's issue is dispositive of this case, we need not address Black's allegations of error.

### FACTS

The facts in the light most favorable to the verdict indicate that Keystone is a Pennsylvania-based manufacturer of powdered-metal parts. In 1957, Lowell A. Black entered into a written agreement to act as Keystone's exclusive sales representative and agent for the sale of Keystone's powdered-metal parts in Indiana. Later, Black's territory expanded to include Kentucky. Black worked on a commission only basis. He eventually incorporated his business and called it Lowell A. Black, Inc. Black, serving as Keystone's manufacturer's representative, has always operated as

an independent contractor and has never worked for Keystone as an employee.

Keystone maintained a secret policy of adjusting commission rates so that Black could only earn total compensation in an amount which Keystone executives subjectively felt was fair. When Black objected to changes made in his commission rates, Keystone advised him that if he wanted to earn more money, he needed to work harder and make more sales. However, Keystone never informed Black that there was a "ceiling" on the compensation he could earn and that his income could always be adjusted downward to an amount Keystone felt was sufficient.[1]

When Black took over the Kentucky sales territory, he was required to contend with Keystone's poor reputation in the area. However, Black worked diligently for years to develop contacts and business in Kentucky. In the early 1980's, Black became aware of a new compressor project at the General Electric [G.E.] plant in Louisville, Kentucky. This new compressor was expected to require powdered-metal parts. Over the next several years, Black devoted substantial time and effort in securing the G.E. account. Black met success: Keystone was awarded the powdered-metal parts business for the new G.E. compressor which finally went on line for mass production in January of 1986.

In November of 1985, Black and Keystone prepared a sales forecast for Black's territory for 1986. Although sales for Keystone in other territories were expected to be flat in 1986, Black's sales were projected to increase substantially. Black's 1986 G.E. account was to be one of the top ten (10) of Keystone's largest accounts. The new G.E. compressor part was expected to constitute two-thirds of Black's total sales.

In March of 1986, Keystone terminated its twenty-nine (29) year relationship with Black under the following provision of the parties' contract:

Both parties agree that this agreement may be terminated at any time by either party for any reason upon the giving of sixty (60) days written notice by either party to the other.

Pursuant to the contract, Black was paid commissions on orders received within sixty (60) days of the notice of termination shipped within one-hundred and fifty (150) days of the notice of termination. There is no dispute that Keystone terminated Black under the provision set out above and paid him the commissions he was entitled to under the contract.

Keystone maintained that the decision to terminate Black's agency was motivated by a need to cut expenses. However, Keystone admitted at trial that terminating Black, who worked on a commission only basis, did not save expenses. Keystone gave Black's territory, including the G.E. account, to the son of Keystone's Chief Engineer. Black's replacement receives a salary, reimbursement of expenses and a sales commission.

Based on Keystone's actual sales figures, the total commissions Black would have earned over the four (4) years after his termination for the customers he had previously developed and serviced amounted to approximately $350,000.00. When terminated, Black was sixty-one (61) years old. He attempted to secure a position as a sales representative for other powdered-metal parts manufacturers. However, since it would take many years to develop customers and sales territories, Black was unsuccessful and was forced into early retirement.

Additional facts are supplied as necessary.

## DECISION

Whether Indiana recognizes a cause of action for the wrongful termination of an agency relationship effected under an ex-

1. It is clear from the record, *in passim,* that Black's complaint, as well as the theory upon which the case was tried, was based on Black's allegation that he suffered damages flowing from the wrongful termination of the agency relationship. Black did not allege, nor was this case tried, under the theory that Black suffered damages from Keystone's breach of an implied duty to exercise good faith in the course of dealing during the life of the agency.

press "at will" termination provision in a contract?

■ Under Indiana law, an "at will" agency contract may be terminated without cause or regardless of bad faith. *Miller v. Ortman* (1956), 235 Ind. 641, 136 N.E.2d 17; *Warrick Beverage Corp. v. Miller Brewing Co.* (1976), 170 Ind.App. 114, 352 N.E.2d 496; *Frank Lyon Co. v. Maytag Corp.,* (E.D.Ark.1989), 715 F.Supp. 922; *Puretest Ice Cream, Inc. v. Kraft, Inc.,* (1st Cir.1986), 806 F.2d 323; *Communications Maintenance, Inc. v. Motorola, Inc.,* (7th Cir.1985), 761 F.2d 1202; *Rockwell Engineering Co., Inc. v. Automatic Timing & Controls Co.,* (7th Cir.1977), 559 F.2d 460.

■ We must take responsibility for the confusion in the law in this area. In *Montgomery Ward & Co. v. Tackett* (1975), 163 Ind.App. 211, 323 N.E.2d 242, we held broadly that the principal's wrongful exercise of its power to terminate an agency relationship will render the principal liable in damages if the agent sustains substantial injury as a result of the principal's breach of its duty to exercise good faith. We concede that *Tackett* can be read to contemplate an action, such as the one at bar, by an agent against his principal who terminates an at will agency contract in bad faith. However, a close reading of the *Tackett* analysis, as performed by the court in *Rockwell Engineering,* 559 F.2d 460, reveals that the *Tackett* holding is not that broad, nor could it be, as such a holding is contra to our supreme court's decision in *Miller,* 136 N.E.2d 17.

In *Tackett,* Montgomery Ward purportedly terminated the Tacketts' agency under a provision in the parties' written contract which permitted Montgomery Ward to terminate its agents for failing to follow Montgomery Ward's "Current Policies and Procedures." Montgomery Ward argued that certain discrepancies revealed in an audit regarding the Tacketts' claims for credit from the company justified the termination of the agency under the provision described above. In affirming the jury's award of damages in the Tacketts' favor, we noted that the principal owes his agent

a fiduciary duty of good faith in the incidents of their relationship and must use care to prevent the agent from suffering harm *during the prosecution of the agency enterprise.* 163 Ind.App. at 217, 323 N.E.2d at 246. We noted further that:

> [S]ufficient evidence was adduced from which the jury could have found that Montgomery Ward failed to exercise good faith *in the course of dealing* with the Tacketts ... [t]hroughout the course of the agency,....

*Id.* (Emphasis added.) In effect, we held that Montgomery Ward's reliance on a "termination for cause" clause in the contract was pretextual and upheld the jury verdict in favor of the Tacketts for their damages suffered from Wards' breach of its duty to exercise good faith during the life of the agency. *Rockwell Engineering,* 559 F.2d 460, 463. *Tackett* does not, and cannot, stand for the proposition that an agent may recover damages for his principal's bad faith termination of the agency properly invoked under an express "at will" term of a contract. *Id.*

■ The existence of express terms in a valid contract precludes the substitution of and the implication in law of terms regarding the subject matter covered by the express terms of the contract. *Kincaid v. Lazar* (1980), Ind.App., 405 N.E.2d 615. When the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law. *Id.* Implied covenants are not favored in Indiana, especially where they restrict the freedom to enter into contracts. *Keystone Square v. Marsh Supermarkets, Inc.* (1984), Ind. App., 459 N.E.2d 420.

■ As stated earlier, Indiana law permits the termination of an "at will" agency contract without cause or regardless of bad faith. *Miller,* 136 N.E.2d 17; *Warrick,* 352 N.E.2d 496; *Frank Lyon Co.,* 715 F.Supp. 922; *Puretest Ice Cream, Inc,* 806 F.2d 323; *Communications Maintenance, Inc.,* 761 F.2d 1202; *Rockwell Engineering,* 559 F.2d 460. There is no dispute that Keystone terminated Black pursuant to the express "at will" provision in the written contract. Therefore, we must reverse and

remand with instructions that judgment be entered in favor of Keystone.

Judgment reversed.

RATLIFF, C.J., concurs.

CHEZEM, J., dissents with separate opinion.

CHEZEM, Judge, dissenting.

I respectfully dissent. The majority confirms that Black alleged in his complaint that he suffered damages as a result of Keystone's breach of an implied covenant of good faith and fair dealing in the wrongful termination of their agency relationship. However, in footnote one, the majority states, "Black did not allege, nor was this case tried, under the theory that Black suffered damages from Keystone's breach of an implied duty to exercise good faith in the course of dealing during the life of the agency." The jury may very well have determined that Keystone failed to act with good faith in the course of dealing with Black.

Keystone gave Black's territory including the G.E. account to the son of Keystone's Chief Engineer. Clearly, that decision was made during the life of the agency relationship between Keystone and Black. The jury, as fact finder, found for Black. The jury easily could have determined that this action, among others, constituted a failure to act with good faith in the course of dealing.

While the majority correctly states that Indiana law permits the termination of an at-will agency contract without cause or regardless of bad faith, it is repugnant to our ideas of fairness that Keystone should be allowed to encourage Black to work harder and make more sales, to wait until Black is successful in obtaining a major contract, and then terminate him, thereby denying him approximately $350,000 in commissions over the following four (4) years. I would vote to affirm the trial court.