In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-1482

HUBERT E. WALKER, on behalf of himself and a class,

*Plaintiff-Appellant,*

*v.*

TRAILER TRANSIT, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:13-cv-00124-TWP-DKL — **Tanya Walton Pratt**, *Judge.*

ARGUED SEPTEMBER 16, 2015 — DECIDED JUNE 1, 2016

Before POSNER, EASTERBROOK, and WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Trailer Transit relies on independent truckers, which following the parties' convention we call the Drivers (though they also provide the rigs that carry the cargo). Trailer Transit contracts with shippers for the movement of cargo, then contracts with Drivers to provide transportation. It promises Drivers 71% of the gross revenues, with exclusions. Here is the language:

> The parties mutually agree that [Trailer Transit] shall pay to [Driver], as rental for the equipment leased herein, for trips under [Trailer Transit]'s operating authorities or in [Trailer Transit]'s service, a sum equal to seventy-one percent (71%) of the gross revenues derived from use of the equipment leased herein (less any insurance related surcharge and all items intended to reimburse [Trailer Transit] for special services, such as permits, escort service and other special administrative costs including, but not limited to, Item 889).

In this suit a class of about 1,000 Drivers contends that Trailer Transit made a profit on its "special services" and owes 71% of that profit to the Drivers. The district court held otherwise. 1 F. Supp. 3d 879 (S.D. Ind. 2014); 2015 U.S. Dist. LEXIS 20250 (S.D. Ind. Feb. 19, 2015).

The Drivers contend that only items provided at cost can be classified as "special services" (such as permits, licenses, flashing lights, and escort vehicles for over-wide or over-long loads). If Trailer Transit bills a customer for more than its cost, then the service cannot be an item "intended to reimburse" Trailer Transit, as the Drivers see things. The district court faulted this contention because it amounts to saying that the Drivers are entitled to 71% of the gross revenue on the principal charge for transportation (which Trailer Transit bills at a price per mile) and 71% of the net revenue on everything else. That just isn't what the contract says. Drivers are entitled to 71% of the gross charge for "use of the equipment" (that is, the Drivers' rigs), but the contract does not provide for a share of Trailer Transit's net profit on any other part of the bill. It would be possible to write such a contract, but the parties didn't. Indiana law governs the meaning of this contract in this diversity litigation, and the Drivers do not invoke any principle of Indiana law that

turns "71% of gross on X and nothing on Y" into "71% of gross on X plus 71% of net on Y".

True enough, one standard meaning of "reimburse" is to recover costs. Someone who submits a voucher for expenses incurred on a business trip seeks reimbursement of actual outlays rather than a profit. But this is not the *only* possible meaning of "reimburse." The word also is used to mean "compensate" or "pay." If the contract had said "reimburse *the expense of* special services," that would limit the word's meaning to recovery of actual costs. But those italicized words aren't in the contract.

Perhaps the Drivers could have argued that the exclusion of "items intended to reimburse [Trailer Transit] for special services" limits this category to items provided at cost. They then would be entitled to 71% of everything else on the bill sent to the shipper. So if Trailer Transit paid someone $1,000 to accompany an over-wide shipment and display a "WIDE LOAD" banner, and billed the shipper $1,250, then the Driver would be entitled to $887.50 for that escort service—and Trailer Transit would lose $637.50 ($1,250 less $1,000 less $887.50 equals -$637.50). But that's not the argument made in the district court. The Drivers asked for $177.50 (71% of Trailer Transit's gain of $250) on this item, and their appellate brief is full of similar examples in which they claim 71% of the net. Only in passing (a few sentences in the brief, and one at oral argument) did the Drivers suggest that the use of the word "reimburse" entitles them to 71% of the *gross* on all special services billed at even a dollar over cost. That's not enough to preserve the argument—which as this example shows also has little to recommend it. Why would Trailer Transit lock itself into automatic losses on special services?

(We put to one side all questions about whether the $250 in our example is a profit in the first place. Trailer Transit has employees and other overhead expenses to cover; lining up and managing escorts is costly. The difficulty of determining Trailer Transit's real economic profit on any service may be among the reasons why the contract does not entitle Drivers to a portion of its net revenue.)

A better line of argument for the Drivers might have started from the principle that parties cannot take opportunistic advantage of contractual commitments. See *Keystone Carbon Co. v. Black*, 599 N.E.2d 213, 214–15 & n.1 (Ind. App. 1992). Suppose that, after a given Driver had signed the contract, Trailer Transit reduced its standard mileage rate and increased the price of special services to shippers in a way that left shippers indifferent (they don't care how line items on a bill are parceled out) but reduced the portion of the bill subject to their 71% share. We asked the Drivers' lawyer whether they are making an argument of this kind. The answer is no; they do not contend that Trailer Transit has moved charges from the standard shipping fee to special services. The whole of the Drivers' position is that they are entitled to a slice of any net profit on special services, and the contract provides no support for that.

Hubert Walker, the representative plaintiff, furnished services to Trailer Transit for seven years. He must have found the remuneration satisfactory. Only in retrospect did he look for more, filing this suit about two years after hauling his last load. The judiciary does not rewrite contracts after the fact to favor one side. Walker and the other Drivers might have insisted on receiving some part of the profit from special services (and then perhaps Trailer Transit would

have offered less than 71% of the gross), but that's not what this contract says.

AFFIRMED