**B & T DISTRIBUTORS, INC.,**
**Plaintiff-Appellee,**

v.

**MEISTER BRAU, INC., Defendant-**
**Appellant.**

**No. 18860.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 20, 1971.

Decided April 7, 1972.

Fred H. Bartlit, Jr., Samuel A. Haubold, Chicago, Ill., for defendant-appellant; Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., of counsel.

James W. Bradford, Indianapolis, Ind., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and FAIRCHILD and PELL, Circuit Judges.

FAIRCHILD, Circuit Judge.

Plaintiff B & T is a beer wholesaler in Tippecanoe county, Indiana. Defendant Meister Brau is a brewer. From December, 1965 until June 1, 1970, defendant sold beer to plaintiff. On May 18, 1970, defendant gave written notice terminating the relationship as of June 1, 1970.

Plaintiff brought this action alleging an oral contract whereby defendant's predecessor granted plaintiff the exclusive right to distribute defendant's products in Tippecanoe county.[1] Plaintiff relied on an Indiana statute, Burns Stat.Ann. § 12–451a, IC 1971, 7–2–23, and claimed there was no cause or provocation as required by that statute before a brewer may terminate an agreement to sell beer to a wholesaler.

Defendant denied granting plaintiff an exclusive right, denied that § 12–451a(a) (2) was applicable, and denied violation if applicable.

§ 12–451a(a) (2) makes it unlawful "unfairly, without due regard to the equities of such wholesaler or manufacturer of alcoholic malt beverages and without just cause or provocation, to cancel or terminate any agreement or contract, written or oral, hereafter entered into by and between a wholesaler and manufacturer, for the sale of alcoholic malt beverages."

At the trial plaintiff introduced evidence of conversation in January, 1965 and a confirming letter from defendant's predecessor dated January 15, 1965, for the purpose of showing a contract which gave plaintiff the exclusive right to distribute defendant's products in Tippecanoe county, Indiana. Plaintiff also introduced evidence for the purpose of showing that defendant had no real cause for complaint about plaintiff's efforts. Defendant introduced evidence of plaintiff's inadequate sales force, lack of attention to the business, and declining sales record, all tending to establish reasons for deciding to terminate the relationship.

The district court found that an agreement had been made in January, found that plaintiff had fulfilled its obligation and, in substance, that defendant did not have just cause for termination, applied the statute, and entered judgment requiring continued performance.

---

1. Jurisdiction is founded on diversity. The action was brought in a state court, but removed by defendant. Indiana law governs.

The finding as to the existence of the agreement[2] is as follows:

"5. That on or about January 15, 1965 by written memoranda dated said date and by oral agreement, the plaintiff and defendant entered into an agreement whereby the defendant granted to the plaintiff an exclusive right to the plaintiff to distribute the defendant's products in Tippecanoe county, Indiana."

The difficulty is that the statute was enacted March 11, 1965, applied, by its terms to agreements or contracts "hereafter entered into," and the agreement claimed by plaintiff and found by the court was made January 15, 1965.

In the absence of this statute, the law of Indiana is clear that a contract which provides for continuing performance and which has no termination date, or which provides that it will last indefinitely, is terminable at will by either party upon reasonable notice. § 19–2–309, Burns Ind.Stat.Ann., IC 1971, 26–1–2–309. Miller v. Ortman, 235 Ind. 641, 136 N. E.2d 17, 33 (1967), Bell v. Speed Queen, 407 F.2d 1022, 1024 (7th Cir. 1969). Both the cited cases involve distributorships.

Plaintiff argues on appeal that the communications in January produced only an offer or unilateral contract which was not "entered into" until December when plaintiff received its permits and first began to buy beer. Plaintiff did not possess the required permits in January, and the distributorship was conditioned on its obtaining them. It applied promptly, but the state authorities at first refused to issue a permit. Plaintiff successfully litigated the matter and received its permits in November 1965.

Given the January agreement as claimed by plaintiff and found by the court, it seems clear that defendant was bound at least by the time plaintiff applied for a permit,[3] and that the delay in obtaining the permit did not cause the contract not to be entered into until after March 11, 1965, the date of passage of the statute. The agreement or contract here was complete prior to the effective date of the statute.

An automobile dealership statute § 218.01, Wis.Stats., with wording as to cause for termination similar to this Indiana statute, was held constitutional in Buggs v. Ford Motor Co., 113 F.2d 618, 621 (7th Cir. 1950) and Kuhl Motor Company v. Ford Motor Company, 270 Wis. 488, 71 N.W.2d 420 (1955), but was construed in Buggs not to apply retroactively. The same wording also appeared in a Colorado statute regarding automobile dealerships, held unconstitutional for vagueness by a three judge district court, General Motors Corporation v. Blevins, 144 F.Supp. 381 (D.Colo.1956). It may well be that the Indiana legislature specified prospective application in order to minimize questions of constitutionality. We conclude the statute does not apply here.

The judgment is reversed and the cause remanded with directions to dismiss the complaint.

2. The complaint used "agreement" and "contract" interchangeably. The district court used "agreement" in its findings and "contract" in its conclusions. The case does not turn on any conceptual difference between the two terms.

3. § 19–2–206(1) (a), Burns Ind.Stat.Ann., IC 1971, 26–1–2–206(1) (a), provides that unless otherwise unambiguously indicated, "an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances." Application for permit would be a reasonable manner of accepting, and Meister Brau would have known when B & T applied for its permit, as required by § 19–2–206(2), because it signed as sponsoring brewer.