BLINN WHOLESALE DRUG, Plaintiff,

v.

ELI LILLY AND COMPANY,
Defendant.

No. CV 85–4422.

United States District Court,
E.D. New York.

Dec. 2, 1986.

Brody, Sinrod & Brody by Richard T. Sinrod, Massapequa, N.Y., for plaintiff.

Dewey, Ballantine, Bushby, Palmer & Wood, by Jack Kauffmann and Steven J. Miller, New York City, for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Blinn Wholesale Drug Co., Inc. ("Blinn") brings this diversity action for breach of contact against defendant Eli Lilly and Company ("Lilly"). The parties now cross-move for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons stated below, the Court grants defendant's motion and denies plaintiff's motion.

Blinn is a wholesale distributor of pharmaceuticals, beauty aids, sundries, and other products. Lilly is a pharmaceutical manufacturer. On July 1, 1985, the parties entered into a contract, entitled "Warehousing and Distribution Service Agreement," setting forth the terms under which

Lilly would provide its products to Blinn for distribution. The contract provided that Blinn was to purchase from Lilly its entire requirements for products sold under Lilly's "Lilly" and "Dista" trademarks and was to comply fully with all laws applicable to the purchase, handling, sale, and distribution of the products covered by the agreement. The contract further provided that it would run until June 30, 1986 unless renewed or terminated. The agreement could be renewed for successive one year terms at the option of the parties. Either party had the right to terminate the agreement upon thirty days' notice or upon notice for breach by the other party of any covenant contained in the contract. The contract explicitly declared that any failure by Blinn fully to comply with applicable laws or the Drug Enforcement Agency's registration requirements would constitute a breach of the agreement. The agreement provided that it was to be interpreted in accordance with and governed by Indiana law.

On September 6, 1985, Blinn received a shipment of thirty six bottles of CECLOR, a Lilly product, from H.L. Moore Drug Exchange, a non-Lilly distributor. Blinn claims that it did not order this shipment and that it was sent to Blinn by mistake, an assertion that Lilly accepts for purposes of the pending motions. Blinn sold eight of the bottles to its customers. On September 26, 1985, a Food and Drug Administration ("FDA") agent discovered the remaining bottles of CECLOR, which were part of a lot subject to recall as a misbranded or adulterated antibiotic because it was packaged in counterfeit containers and the capsules in the bottles contained a blue dye not yet approved by the FDA for use in the United States. The receipt and sale of adulterated or misbranded drugs is a violation of the Food, Drug and Cosmetic Act, 21 U.S.C. § 331.

By letter dated November 27, 1985, Lilly notified Blinn that it was terminating the contract between the parties effective December 31, 1985. Blinn then filed this action, seeking a temporary restraining order and preliminary and permanent injunctive relief as well as damages. After a hearing on December 17, 1985, then-District Judge Frank X. Altimari denied Blinn's motion for a temporary restraining order and preliminary injunctive relief. The Second Circuit affirmed Judge Altimari's decision, and, upon remand, the case was ultimately reassigned to this Judge.

A court may grant summary judgment only if "there is no genuine issue as to any material fact and.... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corporation v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount Theatres, Inc.,* 388 F.2d 272, 278–79 (2d Cir.1967), *cert. denied,* 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752 (1972). On a motion for summary judgment, "inferences to be drawn from the underlying facts.... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, the sheer possibility that a factual dispute *may* exist, without more, is insufficient to overcome a convincing presentation by the moving party. *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). The United States Supreme Court has recently held that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment: the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby,* —— U.S. ——, ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

As to question of the genuineness of a purported dispute regarding the facts of a case, the existence simply of a scintilla of evidence in support of a party's position is insufficient to withstand a motion for summary judgment; rather, there must be evidence upon which the finder of fact could reasonably find for the party opposing the motion. —— U.S. at ——, 106 S.Ct. at 2512.

A court, furthermore, will not allow a litigant opposing summary judgment to use mere conclusory allegations or denials as a vehicle for obtaining a trial. *Quinn,* 613 F.2d at 438. A party must do more than simply show that there may be some "metaphysical doubt" concerning the material facts. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* —— U.S. ——, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). As to the issue of the materiality of any dispute over given facts, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* —— U.S. at ——, 106 S.Ct. at 2510. Summary judgment is undoubtedly warranted, for instance, where a party has failed to make a showing sufficient to establish the existence of an element that is essential to the party's case since, in such a situation, the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex,* —— U.S. at ——, 106 S.Ct. at 2553.

The application of these principles that govern summary judgment motions to the case at bar seems, upon initial consideration, undeniably to lead to the conclusion that summary judgment should be entered in favor of Lilly. The parties do not dispute that, in a letter dated November 27, 1985, Lilly gave Blinn notice that it would be terminating the agreement between the two companies on December 31, 1985. The agreement directly states that either party has the right to terminate the contract upon thirty days' notice. Since there are no allegations that the contract was in any way fraudulent or violative of public policy in New York, this Court must uphold the parties' selection of Indiana law as controlling their agreement. *Hawes Office Systems, Inc. v. Wang Labs, Inc.,* 537 F.Supp. 939 (E.D.N.Y.1982). Under Indiana law, courts must apply clear and unambiguous termination clauses as written, and will not imply a cause requirement where the language and structure of a contract indicate

the parties' intent that a termination clause not be limited in such a manner. *Communications Maintenance, Inc. v. Motorola, Inc.,* 761 F.2d 1202 (7th Cir.1985); *Snihurowycz v. Aamco Transmissions, Inc.,* 418 N.E.2d 1190 (Ind.App.1981); *Piskorowski v. Shell Oil Co.,* 403 N.E.2d 838 (Ind.App. 1981). Lilly, it therefore appears, was acting completely within its rights when it decided to terminate the agreement with Blinn on a date more than thirty days after it gave Blinn notice of its intention to terminate the contract.

Blinn, however, argues that, despite Lilly's seeming conformance with the clear language of the contract in its exercise of its power of termination, three separate legal doctrines require that the Court deny Lilly's motion for summary judgment, namely, the doctrines of unconscionability, waiver, and estoppel. Blinn's contentions, nonetheless, ultimately prove meritless.

It is Blinn's position that, given the disparity of bargaining power between the parties and Blinn's perceived need to remain an authorized Lilly distributor, the thirty day termination provision, without which Lilly would not sign the agreement, constitutes an overly burdensome, unconscionable provision. Blinn asserts the heart of the issue is whether plaintiff, "who for the past 10 years has expended substantial sums of money, time and effort developing a business around his ability to be a full line distributor, which full line status is clearly dependent upon the ability to distribute Lilly products, can afford to turn down a take it or leave it proposal sent to it by Eli Lilly and Company," one of the, if not the, largest, pharmaceutical manufacturers in the United States. Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment 18 ("Plaintiff's Memorandum").

The unconscionability doctrine is a limited exception to Indiana courts' general reluctance to alter the terms of an express contract. Courts construing the doctrine under Indiana law have defined an unconscionable contract to be "one which contains unreasonable or unknown terms *and*

is the product of inequality of bargaining power." *Communications Maintenance,* 761 F.2d at 1209; *Piskorowski,* 403 N.E.2d at 846–47 (emphasis in originals). The determination of whether an agreement is unconscionable is a question of law and is to be made based upon the circumstances existing at the time the contract was entered into. *Weaver v. American Oil Co.,* 257 Ind. 458, 276 N.E.2d 144 (Ind.1972); *Dan Purvis Drugs, Inc. v. Aetna Life Insurance Co.,* 412 N.E.2d 129 (Ind.App. 1980).

*Weaver* is the only case that the parties have brought to the Court's attention that holds that a specific contract or contractual provision was unenforceable under Indiana law because of unconscionability. *Weaver* involved a lease between a service station operator and an oil company. The lease, which was a printed form prepared by the oil company, contained, in addition to usual leasing provisions, a "hold harmless" clause that provided in substance that the operator would both hold harmless and indemnify the oil company for any negligence of the oil company occurring on the leased premises. *Weaver* arose after an employee of the oil company, while on the premises, sprayed gasoline over the operator and his assistant, causing them to be burned. The oil company filed an action for declaratory judgment to determine the operator's liability for the incident under the lease.

The Indiana Supreme Court held that the clause in question was unconscionable and therefore unenforceable. The Indiana court noted that the operator had left high school after only one and a half years and, prior to leasing the service station, had worked at various skilled and unskilled labor oriented jobs. There was nothing in the record to indicate that the operator ever read the lease that the oil company's agent presented to him each year, that the agent ever asked the operator to read it, or that the agent in any manner attempted to call the operator's attention to the "hold harmless" clause or explain the provision to him in a way that might enable the operator to grasp its legal significance.

The clause, furthermore, was in fine print and contained no title heading that would have identified it as an indemnity clause. Also, the operator never consulted legal counsel nor did the oil company ever suggest to the operator that he might want to do so. The Court stated, "It seems a deplorable abuse of justice to hold a man of poor education, to a contract prepared by the attorneys of [the oil company], for the benefit of [the oil company] which was presented to [the operator] on a 'take it or leave it basis.'" 276 N.E.2d at 147.

■ The facts confronting the *Weaver* court are a far cry from those now before this Court. Plaintiff in the instant case is not an uneducated individual but a corporation that has been in business for decades and makes annual sales totalling in the tens of millions of dollars. Blinn has nowhere alleged or otherwise shown that it was unaware of the termination provision of its contract with Lilly or was unclear as to the meaning or significance of the provisions. Nor has plaintiff illustrated any misleading or otherwise improper misrepresentations, statements, or other actions that Lilly took with regard to the agreement and its various provisions. Indiana courts addressing the doctrine of unconscionability under *Weaver* have made it clear that a contract should only be declared unenforceable due to unconscionability "when there is a great disparity in bargaining power which leads the party with the lesser power to sign a contract unwillingly or unaware of its terms" and when the contract is "such as no sensible man not under delusion, duress or in distress would make, and such as no honest and fair man would accept." *Rumple v. Bloomington Hospital,* 422 N.E.2d 1309, 1313 (Ind.App.1981); *Dan Purvis Drugs,* 412 N.E.2d at 131. Blinn's contract with Lilly is certainly not one into which only a person deluded, under duress, or distressed would enter. Furthermore, the fact that Blinn signed a standardized form prepared by Lilly, an economically stronger party, that arguably includes terms favorable to Lilly, by no means indicates that the con-

tract is necessarily unenforceable. *Rumple*, 422 N.E.2d at 1313. "Contracts.... are not unenforceable merely because, under the terms of the agreement, one party enjoys advantages over another." *Dan Purvis Drugs*, 412 N.E.2d at 131; *Piskorowski*, 403 N.E.2d at 847 n. 6.

Accordingly, the Court holds that the agreement's thirty day termination provision is not unenforceable as unconscionable. *Cf. Communications Maintenance*, 761 F.2d 1202 (clause allowing termination on thirty day's notice upheld); *Rockwell Engineering Co., Inc. v. Automatic Timing & Controls Co.*, 559 F.2d 460 (7th Cir.1977) (twenty-eight day notice of termination upheld); *B & T Distributors, Inc. v. Meister Brau, Inc.*, 459 F.2d 29 (7th Cir. 1972) (two week notice of termination upheld).

Blinn next argues that Lilly has waived its right to terminate the contract between the parties pursuant to the thirty day termination clause by entering into numerous price guarantees extending not merely beyond a thirty day period, but beyond the life of the one year agreement itself. A large part of Blinn's business consists of long term contracts to supply pharmaceutical products to hospital associations, state agencies, and other institutional buyers at guaranteed prices. Whenever Blinn received a request to bid on such a contract, it would send Lilly the contract particulars. Lilly in turn would guarantee to supply the desired products in a quantity and at a price that would permit Blinn to perform the contract with the institution soliciting the bid. Lilly would also furnish to Blinn's prospective customer a manufacturer's certification stating that Lilly would supply Blinn with the quantity of the product that Blinn was contracting to supply. During the years 1983–1985, Blinn entered into some six hundred long-term contracts to supply Lilly products to institutional buyers at specific guaranteed prices. None of the guarantees Lilly provided to Blinn with regard to any of these contracts contained any reference to a right by Lilly to terminate its guarantee upon thirty days' notice, nor was Blinn entitled under its contracts

to terminate its obligations if Lilly were to exercise a purported power of termination. Blinn contends that, whether or not these guarantee agreements are considered part and parcel of the overall, primary contract between the parties or viewed as constituting separate contracts, these guarantee agreements are evidence of a long term business relationship between Blinn and Lilly that was not terminable merely "at whim," and demonstrate Lilly's waiver of its contractual rights with respect to timing of the termination of their primary agreement.

█ The Court agrees neither with Blinn's analysis nor conclusion. Waiver is the voluntary and intentional relinquishment of a known right. *Lafayette Car Wash Inc. v. Boes*, 258 Ind. 498, 282 N.E.2d 837, 839 (1972); *Grenchik v. State ex rel. Pavlo*, 175 Ind.App. 604, 373 N.E.2d 189, 193 (1978); *City of Evansville v. Follis*, 161 Ind.App. 396, 315 N.E.2d 724, 728 (1974). The party asserting the existence of a waiver bears the burden of proving such waiver. *American National Bank & Trust Co. v. St. Joseph Valley Bank*, 180 Ind.App. 546, 391 N.E.2d 685, 687 (1979); *Grenchik*, 373 N.E.2d at 193. Blinn has not shown to the Court's satisfaction that Lilly's actions in any way indicate an intent to relinquish its right to terminate upon notice its primary contract with Blinn. It does indeed matter if the guarantee agreements are deemed part of the primary contract, for it is only these agreements that contain any covenants that appear to cover periods of greater than thirty days and beyond June 30, 1986, and the primary contract makes clear in no uncertain terms that it is to be considered distinct from any other agreements the parties may have entered into or might enter into in the future. Paragraph III.N of the contract signed July 1, 1985, states:

*Entire Agreement.* This Agreement shall (1) supersede all prior contracts, agreements, and understandings between the Wholesaler and Lilly, including any agreements between Dista Products

Company, Division of Eli Lilly and Company, and the Wholesaler, all of which are hereby terminated; (2) constitute the complete agreement between the Wholesaler and Lilly; (3) be controlling to the exclusion of all terms and conditions of the Wholesaler's purchase orders or other documents in conflict with this Agreement.

Lilly's intention that the guarantee agreements be considered separate from the primary contract is further demonstrated by the fact that, despite its termination of the primary contract, Lilly has continued to honor its ongoing guarantees regarding Lilly products Blinn has contracted to supply to various institutional customers.

The facts of the instant case markedly contrast with those presented by the case of *Terry v. International Dairy Queen, Inc.*, 554 F.Supp. 1088 (N.D.Ind.1983), upon which Blinn heavily relies. *Terry* involved a licensor and predecessor's contractual right to prohibit the sale of non-Dairy Queen products without prior written consent and approval. The court noted the licensee and sublicensee had sold food products besides those of Dairy Queen from the very outset of the licensed business. This practice, however, brought forth no objection whatsoever for at least twenty five years, despite the licensor's full knowledge of such sales. In fact, it was the current licensor's predecessor that had first suggested that a food line of non-Dairy Queen products, including hamburgers and sandwiches, be sold. Furthermore, the predecessor licensor was a frequent visitor to the business and was completely familiar with the menu. The court held that these circumstances "surely constitute[ ] a waiver of ... any right to approve or disapprove the sale of food items in plaintiff's store." 554 F.Supp. at 1095, 1096. The Court fails to see any meaningful analogy between the situation in *Terry* and the situation in the case at bar or any other justifiable ground for holding that Lilly waived its right to terminate the July 1, 1985 contract upon thirty days' notice.

Blinn also argues that Lilly should be estopped from invoking the thirty day termination provision. Blinn points out that the July 1, 1985 contract was by no means the first of such contract between the parties; rather, the parties first entered into a similar one year agreement in 1975 and renewed their contractual arrangement each successive year. Blinn contends that "Lilly's silence with respect to its ability to terminate Blinn, the fact that Lilly took no actions to evidence its intention to take any action with respect to the termination of Blinn, .... and the course of business dealings between the parties which served to extend the agreement" constitute grounds for holding Lilly estopped from terminating Blinn. Plaintiff's Memorandum at 23. Blinn further asserts that Lilly should be estopped from its termination of Blinn because Lilly knew of the existence of the counterfeit CECLOR, but failed to notify its distributors, thus creating by its own negligence the condition that allowed Blinn's alleged breach of its contract with Lilly to occur, and because Blinn itself notified Lilly of the counterfeit CECLOR in Blinn's possession even though Blinn had no obligation to do so.

■ For a party successfully to invoke the doctrine of estoppel in Indiana, it must be shown that there existed a false representation or concealment of material facts made with actual or constructive knowledge of the true state of facts, that such representation was made to or material facts concealed from a party who is without knowledge or reasonable means of knowledge of the true facts with the intent that the party rely upon it, and that that party actually relied or acted upon the representation or concealment to his detriment. *AAA Wrecking Co., Inc. v. Barton, Carle & McLaren, Inc.*, 182 Ind.App. 418, 395 N.E.2d 343, 345 (1979); *Kline v. Kramer*, 179 Ind.App. 592, 386 N.E.2d 982, 987 (1979); *Sheraton Corp. of America v. Kingsford Packing Co., Inc.*, 162 Ind.App. 470, 319 N.E.2d 852, 856 (1974). Silence, as well as overt conduct, may give rise to the application of the doctrine, *Sheraton*, 319 N.E.2d at 856; *Erie-Haven, Inc. v. First*

*Church of Christ,* 155 Ind.App. 283, 292 N.E.2d 837, 842 (1973), but only where there is not merely an opportunity to speak but also an imperative duty to do so. *Kline,* 386 N.E.2d at 987; *Erie-Haven,* 292 N.E.2d at 842. The burden of proof lies upon the party asserting estoppel, *AAA Wrecking,* 395 N.E.2d at 345, and whether conduct should be deemed to operate as an estoppel depends largely upon the facts and circumstances of each particular case. *Sheraton,* 319 N.E.2d at 856.

Blinn has failed to demonstrate to the Court that Lilly's actions were such that the doctrine of estoppel should be invoked so as to void Lilly's exercise of its rights under the thirty day termination clause. Blinn, for example, has not shown that Lilly falsely represented or concealed material facts regarding its right to terminate the agreement: Lilly was far from silent concerning its power of termination, placing in the agreement clauses explicitly dealing with this power. Lilly was under no duty to "evidence its intention to take any action with respect to the termination of Blinn" beyond the thirty day notice provided for in the contract. Nor can the Court discern anything in "the course of business dealings between the parties" that mandates a holding that Lilly should be estopped from terminating the agreement.

Finally, any knowledge Lilly may have had as to counterfeit CECLOR in the market is completely irrelevant to Lilly's rights under the thirty day termination provision. The parties' actions and knowledge concerning CECLOR are pertinent, if at all, only to the question of whether Lilly could terminate Blinn for breach of their agreement, not to termination under the thirty day provision. The parties' contractual power under the thirty day termination provision is not restricted to where there has been a breach of the agreement or some other "cause" for termination. The contract contains two distinct termination clauses, one requiring breach, the other not. As the Court has noted above, under Indiana law, a court should not imply a cause requirement where the clear, unambiguous language of a contract indicates the parties' intent expressly to provide otherwise. Lilly was within its rights in its termination of its agreement with Blinn upon thirty days' notice regardless of the facts surrounding or the parties' information pertaining to counterfeit CECLOR.

The Court holds, therefore, that as a matter of law, Lilly acted within its rights in its termination of its agreement with Blinn and is entitled to the entry of summary judgment in its favor. Blinn's motion for summary judgment concerns the question of whether Lilly could properly have terminated the agreement as a result of Blinn's purported breach of the agreement by its receipt and sale of the counterfeit CECLOR. Having found, however, that Lilly justifiably exercised its power of termination under the contract's thirty day termination clause, the Court need not resolve or even address the issue of breach and the ultimate merit of Blinn's motion. Accordingly, the Court hereby grants Lilly's motion for summary judgment and denies Blinn's motion for summary judgment. The Clerk of the Court is directed to enter judgment in favor of Lilly dismissing Blinn's complaint.

SO ORDERED.