INDUSTRIAL DREDGING and ENGINEERING CORPORATION, Plaintiff–Appellant,

v.

SOUTHERN INDIANA GAS AND ELECTRIC COMPANY, a corporation of Evansville, Indiana, Defendant–Appellee.

No. 87–1854.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 4, 1988.

Decided Feb. 22, 1988.

Richard T. Kavaney, St. Paul, Minn., for plaintiff-appellant.

Robert T. Bodkin, Bamberger, Foreman, Oswald & Hahn, Evansville, Ind., for defendant-appellee.

Before CUDAHY, EASTERBROOK and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

The plaintiff in this diversity case seeks to recover, in quantum meruit, money it could not recover under a dredging contract between the parties. The district court rejected plaintiff's arguments and entered judgment for the defendant. We affirm.

I.

Plaintiff Industrial Dredging and Engineering Corporation ("Industrial") is a Minnesota corporation with its principal place of business in Anoka, Minnesota. Defendant Southern Indiana Gas and Electric Company ("SIGECO") is an Indiana corporation with its principal place of business in Evansville. The amount in controversy exceeds $10,000.

Some background is helpful in understanding this case. When coal is used to generate electricity at SIGECO's Culley Station facility, coal ash is a by-product of the process. SIGECO mixes the ash with water and pumps the resulting slurry into one of the ash ponds on the premises. Over time the pond fills with ash and periodically the ash must be removed. Removal is accomplished by dredging the pond using one of two methods. One dredging method utilizes a bucket wheel agitation device, which dislodges ash from the pond floor, bringing it into the suction stream of a vacuum nozzle. The slurry is sucked through a pipe to the shore, where it can be transported elsewhere. This method allows for removal of a greater total quantity of ash than the alternative method not using agitation.

In April 1983, Industrial contracted to dredge the West Ash Pond at Culley Station. The contract called for removal of at least 700,000 cubic yards of ash by use of the agitation dredging method. Industrial's bid proposal acknowledged that the northern one third of the pond might be undredgeable due to submerged debris. It was not possible to determine the nature and extent of debris because the rubble was concealed under a layer of ash. With that knowledge, Industrial and SIGECO executed a contract containing the following clause:

*Familiarization With Site:* The Contractor [Industrial] agrees that he has examined all the available records and has made a field examination of the site and right-of-way; that he has informed himself about the subsurface conditions and surface and subsurface water conditions to be encountered, the character of equipment and facilities needed for the prosecution of the work, the location and suitability of all construction materials, the quantities in the various sections of the work, the local labor conditions and all other matters in connection with the work and services to be performed under the contract.

Any records of subsurface condition, water records or other observations which may have been made by the Owner have been made with reasonable care and accuracy. Such records may be made available to the Contractor for his information, but there is no expressed or implied guaranty as to the accuracy of the records or any interpretation of them. The Contractor recognizes this, and agrees that he has formed his own opinion of the character of materials to be excavated from an inspection of the ground and has put his own interpretation on records.

The Contractor further agrees that the Contract Prices are based on his own knowledge and judgment of the conditions and hazards involved, and not upon any representation of the Owner.

Appellee's Appendix at 34–35. This clause effectively places the risk of undiscovered hazards on Industrial. That allocation of risk is not surprising given the fact that Industrial had dredged numerous other ponds, including the East Ash Pond at Culley Station. Industrial held itself out as a dredging expert and set its price based on its evaluation of the site conditions.

Unfortunately for Industrial, the project proved more difficult than anticipated. After removing some of the ash, Industrial ran into large amounts of debris. The debris, primarily timber and construction materials, caused numerous equipment break-

downs, delaying completion of the task and increasing the cost. By the end of August 1983, Industrial had removed almost 600,-000 cubic yards of ash, receiving $659,-693.70 in payments, minus a retainage to ensure payment of suppliers. On August 31, the parties executed a "Change Order," allowing for higher payments when Industrial encountered debris. Industrial completed the project under the change order, removing another 135,000 cubic yards of ash for a total of 719,372 cubic yards, above the contract requirement of 700,000 cubic yards. The total paid by SIGECO was approximately one million dollars, excluding the retainage, which was eventually paid to Industrial's suppliers under a court order.

Industrial wants more money. Since SIGECO paid in full under the contract, Industrial brought this action under Indiana law seeking recovery in quantum meruit. The contractor asked for another $1.4 million in damages. After trial, Judge Brooks found for SIGECO, holding that the express contract precluded quantum meruit recovery and that plaintiff's other arguments in that court, fraud or negligent misrepresentation and duress, were not pleaded and were contradicted by the evidence. Industrial appeals the decision as to the quantum meruit and negligent misrepresentation claims.

## II.

■ Industrial's quantum meruit claim is almost frivolous. Indiana appellate courts have uniformly held that "[t]he existence of a valid express contract for services … precludes implication of a contract covering the same subject matter. The rights of the parties are controlled by the contract and under such circumstances recovery cannot be had on the theory of quantum meruit." *Kincaid v. Lazar*, 405 N.E.2d 615, 619

(Ind.App.1980) (citations omitted); *see also Milwaukee Guardian Ins., Inc. v. Reichhart*, 479 N.E.2d 1340, 1343 (Ind.App.1985); *Dedelow v. Rudd Equip. Corp.*, 469 N.E.2d 1206, 1210 (Ind.App.1984); *Page v. Schrenker*, 439 N.E.2d 694, 697 (Ind.App. 1982). The theoretical basis for this rule is obvious: where the parties enter into a valid contract allocating risk and reward, courts should be reluctant to overturn that allocation simply because one party underestimated its risk. The contract makes clear that Industrial bore the risk of submerged debris clogging the machinery. The contract states that Industrial formed its own opinion as to submerged debris and set the price based on that opinion. Industrial bound itself to its "best guess"; this court will not disregard that express risk allocation.

Moreover, any judicial attempt to modify the parties' deal might itself be flawed. Here, for example, Industrial might have compensated, in charges to other customers, for the risk of losing money on this contract. A dredging contractor knows that debris may be hidden under a layer of ash. A company, like Industrial, that dredges numerous ponds should be able to spread the risk of unanticipated costs on one project over many transactions, by raising the price on each dredging job enough to insure against the risk. Thus, even if Industrial lost money on the Culley Station project, it may have *correctly* estimated the risk of that loss occurring and compensated by self-insurance, making a slightly larger profit on other projects where the danger of submerged debris was not realized. This, of course, is all speculation, but it suggests that we may not be in possession of all the facts relevant to the economics of the dredging enterprise. In any event, Industrial does not contest the validity of the contract; therefore, quantum meruit recovery is precluded.[1]

---

1. Industrial argues that Indiana courts would override an express contractual risk allocation where conditions are substantially different than those contemplated by the parties *ex ante*. The cases cited by Industrial in support of this proposition involve unilateral changes in project requirements by the party hiring the contractor. *See Connorsville Country Club v. F.N. Bunzen-*

*dahl, Inc.*, 140 Ind.App. 215, 222 N.E.2d 417 (1966). Where those unilateral changes are so substantial as to amount to a modification of the original contract, a court may allow equitable recovery. *Id.* at 222–23, 222 N.E.2d at 423. Here the conditions leading to increased costs were not the results of any breach by

### III.

Industrial's second contention on appeal is that the district court improperly found against it on its negligent misrepresentation claim.

There are two answers to this argument. First, it is very unlikely that Indiana courts would recognize the tort of negligent misrepresentation under these circumstances. *Compare Abdulrahim v. Gene B. Glick Co.*, 612 F.Supp. 256, 263–64 (N.D.Ind.1985) (recognizing the tort in employment context) *and Romack v. Public Serv. Co.*, 499 N.E.2d 768, 775–76 (Ind.App.1986), *rev'd in part on other grounds*, 511 N.E.2d 1024 (Ind.1987) (same) *and Eby v. York Div., Borg–Warner*, 455 N.E.2d 623, 628–29 (Ind.App.1983) (same) *with Wilson v. Palmer*, 452 N.E.2d 426, 429 (Ind.App. 1983) ("Indiana does not recognize the tort of negligent misrepresentation") *and Essex v. Ryan*, 446 N.E.2d 368, 371–72 (Ind.App. 1983) (same) *and English Coal Co. v. Durcholz*, 422 N.E.2d 302, 310 (Ind.App.1981) (same). Indiana courts have consistently refused to extend the tort of negligent misrepresentation beyond the employment context. We are reluctant to adopt a more expansive view of the tort than that adopted to date in Indiana.

Second, even if we were to find that Indiana law allows recovery for negligent misrepresentation, Judge Brooks found that SIGECO made no misrepresentations. *Industrial Dredging & Eng'g Corp. v. Southern Ind. Gas & Elec. Co.*, No. 84 C 64, mem. op. at 15 (S.D.Ind.Apr. 28, 1987). We will overturn that factual finding only if it is clearly erroneous. Fed.R.Civ.P. 52(a); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Judge Brooks correctly points out that there is no evidence of any affirmative misrepresentations by SIGECO, and that Industrial's president said under cross-examination that SIGECO made no misrepresentations.

Even in its brief on appeal, Industrial cannot point to any evidence of misrepresentations. Instead, it argues that Judge Brooks erroneously based his decision on the notion that "Sigeco [sic] had less knowledge of the condition of the pond than did Industrial." Appellant's Opening Brief at 11. Industrial wants us to read the contract to place the risk of undiscovered debris on SIGECO, because the utility supposedly had greater knowledge of the site. But the "Familiarization With Site" clause says the exact opposite: Industrial is the expert and it relied only on its own investigation of the site, not on any representations by SIGECO. Judge Brooks' finding is therefore not clearly erroneous. Industrial's negligent misrepresentation claim must fail.[2]

### IV.

The plaintiff's contentions are wholly without merit. We affirm, with costs to the defendant.

AFFIRMED.

---

SIGECO. Neither party could predict subsurface conditions with complete accuracy.

**2.** At oral argument, Industrial raised a third issue, contending that SIGECO improperly withheld certain documents from Industrial. If Industrial intends this contention to support the negligent misrepresentation claim, it is answered by our discussion of that claim. To the extent the argument is a separate issue, Industrial's briefs make no mention of it and it was not tried below. It would be difficult for us to conceive of a more obvious waiver.