**Donald A. BROWN, Plaintiff,**

v.

**MID–AMERICAN WASTE SYSTEMS,
INC., Defendant.**

**No. IP 95–0055 C B/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 3, 1996.

---

Robert G. Barker, Price & Barker, Indianapolis, Indiana, for Plaintiff.

Alan L. McLaughlin, Baker & Daniels, Indianapolis, Indiana, for Defendant.

## MEMORANDUM ENTRY

BARKER, Chief Judge.

In 1983 H & D Excavating, Inc. ("H & D") began operating the Jay County Landfill ("the landfill"). H & D's sole shareholder at that time was the plaintiff, Donald Brown. On October 1, 1988, Brown agreed to sell his shares to Mid–American. Their agreement is memorialized in a document called the Share Purchase Agreement ("the Purchase Agreement").

Pursuant to the terms of the Purchase Agreement, Mid–American paid to Brown the sum of $753,083.51. (Purchase Agreement, ¶ 2). The agreement also provided that an additional $4.5 million would be payable to Brown if a then pending permit application ("the Expansion Application") filed by H & D in 1987 to expand the solid waste disposal area at the landfill was approved by the commissioner of the Indiana Department of Environmental Management ("IDEM"). Mid–American also promised to continue "efforts to obtain approval of the Expansion Application" upon obtaining ownership of H & D. (Purchase Agreement, ¶ 6.06). If IDEM failed to approve the Expansion Ap-

plication by October 1, 1991, however, no additional purchase price was due. (Purchase Agreement, ¶ 2d).

IDEM delayed issuance of the permit until 1993, thus missing the October, 1991 cutoff date and precipitating this lawsuit. In Count I of the Amended Complaint, Brown alleges that Mid–American intentionally delayed the permit application process in order to avoid incurring the additional $4.5 million purchase price, thus breaching the terms of the Purchase Agreement. In the alternative, Brown alleges in Count II that statutory and regulatory changes in the laws governing the issuance of permits for landfills made approval before the deadline impossible. As a result, Mid–American has been unjustly enriched by its beneficial use of the newly-permitted expansion area of the landfill.[1]

On February 28, 1996, Mid–American moved for summary judgment on Count II. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Proc. 56(c). The burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The nonmoving party responding to a properly made and supported summary judgment motion still must set forth facts showing that there is a genuine issue of material fact and that a reasonable jury could return a verdict in its favor. *See Wolf v. City of Fitchburg,* 870 F.2d 1327, 1329 (7th Cir.1989).

■ The crux of defendant's argument is that the existence of the Purchase Agreement precludes the implication of a contract under an unjust enrichment theory. In other words, because the rights and obligations of the parties are controlled by the express terms of a valid contract, defendant maintains that plaintiff cannot base his recovery upon a contract implied in law. We agree.

■ Under Indiana law, the terms quasi-contract, contract implied-in-law, constructive contract and quantum meruit are used almost interchangeably as "legal fictions, created by courts of law, to provide a remedy which prevents unjust enrichment and thereby promotes justice and equity." *City of Indianapolis v. Twin Lakes Enterprises, Inc.,* 568 N.E.2d 1073, 1078 (Ind.App.1991). Each doctrine allows courts to impose obligations "without regard to the assent of the parties bound, to permit a contractual remedy where no contract exists in fact but where justice nevertheless warrants a recovery under the circumstances as though there had been a promise." *Id.; see also Wright v. Pennamped,* 657 N.E.2d 1223, 1229 (Ind.App. 1995).

■ Courts, however, "do not sit to improve the bargains that parties freely negotiate." *Wood v. Mid–Valley Inc.,* 942 F.2d 425, 428 (7th Cir.1991). The existence of express terms in a valid contract thus precludes the substitution of implied terms regarding matters covered by the contract's express terms. *Keystone Carbon Co. v. Black,* 599 N.E.2d 213, 216 (Ind.App.1992). In short, "there can be no constructive contract where there is an express contract between the parties in reference to the same subject matter." *Twin Lakes,* 568 N.E.2d at 1083; *see also Huff v. Biomet, Inc.,* 654 N.E.2d 830, 837 (Ind.App.1995); *Milwaukee Guardian Ins., Inc. v. Reichhart,* 479 N.E.2d 1340, 1343–44 (Ind.App.1985); *Kincaid v. Lazar,* 405 N.E.2d 615, 619 (Ind.App.1980); *Kovatch Mobile Equipment v. Warren Township,* 831 F.Supp. 665, 671 (S.D.Ind.1993).

In this case, Brown asks the court to imply contractual terms to prevent Mid–American from being unjustly enriched by its beneficial use of the landfill's newly-permitted expansion area. Neither side, however, questions the validity of the Purchase Agreement. Nor is it disputed that the Agreement allocates the risks surrounding IDEM's accep-

---

1. The Amended Complaint contains six counts, but only Counts I and II are implicated by the instant motion.

tance of (or delay in accepting) the Expansion Application. Thus, because there is an express and valid contract already covering the subject matter upon which plaintiff bases his unjust enrichment claim, there is no need for the Court to imply a contract or invent contractual terms. Accordingly, summary judgment is granted as to Count II.

In response, Brown makes two arguments, neither of which is persuasive. First, he concedes "that the theories of breach of contract and unjust enrichment are, in at least one sense, mutually exclusive." (Plaintiff's Brief in Opposition, p. 10). He contends, however, that the fact that he cannot ultimately recover under both theories should not stop him from pleading them as alternative theories.

While the Court agrees that the Federal Rules permit litigants to set forth mutually exclusive claims or defenses, *see* Fed.R.Civ. Pro. 8(e)(2), we emphasize that plaintiff's unjust enrichment claim suffers from more than a simple pleading problem. In the typical contract case, for example, a claimant alternatively alleges that (1) a contract exists that was breached, and (2) even if there is no *contract*, equity demands that the injured party be compensated. In this case, however, Brown alleges (1) that a contract exists that was breached, and (2) even if there is no *breach*, equity demands that Brown be compensated. In the typical case, therefore, the alternative claim anticipates that there may be no contract, a situation where courts are often required to imply contractual terms. In this case, by contrast, the alternative claim presumes a valid contract that has not been breached, yet seeks to disregard this express allocation of risks because the deal unjustly enriches Mid–American. Thus, Count II fails because it seeks to rewrite the express terms of a valid contract, not because plaintiff pleads mutually exclusive claims in the alternative.

Brown's second argument is harder to comprehend. He argues that the parties

bargained for an October 1, 1991 deadline based on IDEM's then-existing regulatory framework. Unforeseen statutory and regulatory changes, however, made approval of the Expansion Application by the deadline impossible or impracticable. As a result, Mid–American received a windfall, thus entitling Brown "to relief from the deadline." (Brief in Opposition, p. 8).

When properly invoked, the doctrine of impracticability [2] excuses an obligor's nonperformance of a contractual duty. *See* Restatement (Second) of Contracts, § 261 (1979). If, for example, IDEM's regulatory changes made it impracticable for Brown to render his performance obligations pursuant to the terms of Purchase Agreement, he could raise impracticability as an affirmative defense to excuse his nonperformance. In this case, however, it is undisputed that plaintiff fulfilled his contractual duties. Indeed, rather than preventing Brown from performing his contractual obligations, the regulatory changes affected IDEM, which is not a party to the contract and has no performance duties to excuse. *See, e.g., First Nat'l Bank v. Atlantic Tele–Network*, 946 F.2d 516, 521 (7th Cir.1991). Thus, because Brown's performance was in no way impacted by IDEM's regulatory changes, his reliance on the doctrine of impracticability is ill-advised.

Additionally, the doctrine of impracticability, "like the doctrine of good faith, is a gap filler; it must not be used to alter an agreed upon allocation of risk." *First Nat'l Bank*, 946 F.2d at 521; *see also* Restatement, § 261 (impracticability discharges performance duties, "unless the language or the circumstances indicate the contrary"). Here, the Purchase Agreement expressly contemplates that IDEM may not approve the Expansion Application by October, 1991. Indeed, the contract makes clear that Brown bore this risk and we will not overturn an "allocation simply because one party underestimated its risk," *Industrial Dredging and*

2. Although Indiana courts will excuse a party's performance when an event makes the performance "absolutely impossible," whether they will also do so when performance is merely "impractical" remains unsettled. *Marcovich Land*

*Corp. v. J.J. Newberry Co.*, 413 N.E.2d 935, 942 (Ind.App.1980). However, because plaintiff's claim fails under the more generous impracticability approach, we need not opine on that issue here.

**96**

*Engineering Corp. v. Southern Ind. Gas and Electric Co.*, 840 F.2d 523, 525 (7th Cir.1988). Thus, because he has no remaining contractual duties to excuse, and because the October, 1991 cutoff date is an express term of the Purchase Agreement, Brown's reliance on the doctrine of impracticability does not entitle him "to relief from the deadline." (Brief in Opposition, p. 8).

Accordingly, for the reasons set forth above, the Court GRANTS defendant's motion for summary judgment as to Count II.

It is so ORDERED.